(116 So. 127)

## HANSON v. FIRST NAT. BANK OF BIRMINGHAM. (6 Div. 54.)

Supreme Court of Alabama. March 22, 1928.

Rehearing Denied April 12, 1928.

**1. Wills ☞570—"Securities," from each class of which specific legacies were made payable proportionately held to include preferred stock, notwithstanding reference in will to stock and securities.**

Where will provided that devises of securities should be provided for as far as possible proportionately out of each class of securities, and in another place that the estate consisted of "stock and securities" in corporation, term "securities" included preferred stock in such corporation as well as mortgage bonds and debentures, and specific legacies were payable proportionately out of stock as well as other securities, especially in view of parol evidence explaining testator's intent that securities should include preferred stock.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Security.]

**2. Wills ☞456, 458—Words used in will are given their ordinary meaning and are considered to have been used throughout instrument in same sense.**

Words used in will should be given their usual and ordinary meaning unless context shows they are used in a more restricted sense, and words are supposed to be used throughout instrument in the same sense, especially where intended to describe the subject-matter of a bequest.

**3. Wills ☞488—Ambiguity as to meaning of term "securities" held to permit parol evidence of testator's intention.**

Where will gave stipulated amounts to various legatees to be provided for proportionately out of each class of securities, and described estate as consisting of "stock and securities," parol evidence was admissible to show relation of testator to corporation, and his explanation of his intentions at the time he was considering the terms of the will, and his comments on the language employed, for purpose of determining whether preferred stock as well as bonds was included within term "securities."

**4. Witnesses ☞202—Communications between attorney and deceased client relative to subject-matter of will held not incompetent as privileged (Code 1923, § 7658).**

Testimony of attorney relative to communications from deceased client relating to subject-matter of will *held* not incompetent as privileged communications, under Code 1923, § 7658.

**5. Witnesses ☞140(12)—Trustee held not incompetent as witness in suit for construction of will, involving merely conflicting claims of beneficiaries (Code 1923, § 7721).**

Trustee appointed under will, even if he had pecuniary interest in result of suit involving construction thereof, was not incompetent as witness, under Code 1923, § 7721, where case involved only claims of beneficiaries under the will, and not the quantum of the estate.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by the First National Bank of Birmingham, as executor of the will of Isaac Newton Hanson, deceased, against Albert B. Hanson and others. From the decree the named respondent alone appeals. Affirmed.

The will involved is as follows:

"State of Alabama, County of Mobile:

"I, Isaac Newton Hanson, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament, and I hereby revoke, cancel and annul all wills and other testamentary dispositions that I may heretofore have made of my estate, or any part thereof.

"Item 1. I desire my burial expenses and all just debts which I may owe paid as soon as practicable after my death out of any monies which may be in the hands of my executor. If there should be insufficient money in its hands for that purpose, then such expenses and debts shall be paid out of the proceeds of any other property belonging to my estate.

"Item 2. I give and bequeath to my faithful employee and friend, Malison Bosarge, my shrimping launch with all of the equipment, tackle, appurtenances and supplies on or used in connection therewith, together with my little fifteen or eighteen foot motorboat now at Bayou La Batre, Alabama, with the equipment belonging thereto, and all cypress lumber now on hand at Bayou La Batre used, or intended to be used, in connection with said boats. This bequest does not include the motorboat known as the 'Hacker.' That boat is to remain a part of my estate not specifically devised.

"Item 3. (a). I give and devise to my nephew, William Bailey Thomas, of Jacksonville, Florida, the sum of $10,000.

"(b). I give and devise to my nephew, James Asbury Lambdin, of Dallas, Texas, the sum of $10,000.

"(c). I give and devise to my niece, Clara De Bardeleben Ebaugh, the sum of $10,000.

"(d). I give and devise to my nephew, Henry F. De Bardleben, of New Orleans, Louisiana, the sum of $10,000.

"Item 4. I give and bequeath to Henry T. De Bardleben of Birmingham, Alabama, in trust for my nephew, Bailey De Bardleben, the sum of $10,000, my said trustee to use the rents, incomes and profits of said bequest for the maintenance and support of my said nephew, Bailey, during the latter's minority, and when my said nephew, Bailey, becomes twenty-one years of age, the corpus of said bequest shall be paid to him. Should my said nephew, Bailey De Bardleben, die before reaching the age of twenty-one years leaving a child or children, such bequest shall be paid to them upon the death of my said nephew. Should my said nephew die before reaching the age of twenty-one years leaving no child or children surviving him, then said bequest shall lapse and the money bequeathed shall become a part of my general estate.

."Item 5. A large part of my estate consists of the stock and securities of the De Bardleben Coal Corporation, a corporation organized under the laws of the state of Delaware, and the devises hereinafter made in securities are to be discharged in the securities of said corporation. The said devises are as follows:

"(a). I give and devise to H. T. De Bardleben and Milton Fies the sum of $25,000 face value of said securities to be expended in such manner as they may think proper either in the addition to, or improvement of, or the new erection of, hospitals for the use and benefit of the employees of the De Bardleben Coal Corporation.

"(b). I give and devise to my nephew, Albert Hanson, $30,000 face value of said securities.

"(c). I give and devise to my niece, May Williamson, the sum of $30,000, face value of said securities.

"(d). I give and devise to the First National Bank of Birmingham, Alabama, the sum of $50,000 of said securities in trust for Frederick and Mary Foster, the youngest children of my niece, Mary Thomas Foster, deceased, The income of said securities, or so much thereof as in the opinion of my said trustee may be necessary therefor, shall be devoted to the maintenance and support of said children until the termination of this trust. When said youngest child reaches the age of twenty-one years, or should she die before reaching said age, then upon the death or majority of the oldest child, according to which may last occur, the corpus and unexpended income, if any, of said estate shall be divided, share and share alike, between them, should they both then be living. Should either of said children die before the termination of said trust leaving issue, then his or her share shall go to his or her children in equal shares. Should either of said children die before said period without issue, then his or her share shall go to the survivor of them. Should both of said children die before majority without issue, then said fund shall revert to my general estate.

"Item 6. All of my property of every kind and description not hereinabove bequeathed, shall be divided into three equal parts and my securities shall be distributed proportionately among said three divisions as far as it is practicable. Should it be impracticable to distribute all of my securities in this way, then said distributive parts shall each receive an equal proportion of the securities and the balance of the securities shall be sold and the proceeds thereof divided among such parts or divisions, share and share alike, and I give, devise and bequeath said several parts as follows:

"(a). I give, devise, and bequeath to my niece, Clara Thomas Jones, of Atlanta, Georgia, one of said shares.

"(b). I give, devise and bequeath to my nephew James Asbury Lambdin, of Dallas, Texas, one of said shares.

"(c). I give, devise and bequeath to the First National Bank of Birmingham, Alabama, a corporation organized under the laws of the United States, the other of said shares in trust to manage and control the same, to collect, the rents, incomes and profits and pay the necessary expenses thereof and apply the balance of said rents, incomes and profits in equal parts to the support and maintenance, during the lifetime of my niece, Annie Hanson Garrett, of my said niece and her two children, John Hanson and Robert Garrett. Upon the death of my said niece, Annie Hanson Garrett, the said property is to be divided between her said children, should they both then survive, share and share alike. Should either of them be dead leaving issue then such issue shall take the share of his, or their parent, share and share alike, Should either of said children be dead leaving no issue, then the entire devise and bequest shall become the property of the survivor. Should both of said children then be dead leaving no issue, then the said devise and bequest shall inure to my niece, Clara Thomas Jones, or her heirs.

"Item 7. It is my desire that in the payment of bequests my executor be not in any wise embarrassed because of the lack of funds. In my estate there is a note payable to me in the approximate sum of $106,000, made and executed by the De Bardleben Coal Corporation, of Birmingham, Alabama, which note matures in approximately two years from its date. Upon the payment of such note my executor should have in hand ample money to meet all emergencies. It is my will, and I therefore direct, that no heir shall have the right to demand his or her legacy under the terms of this will from my said executor until the maturity of said note. My executor shall have the right in its discretion to make payment of such bequests prior to such time, but shall not be required to do so upon the demand of any devisee or legatee.

"Item 8. It is further my desire that until the maturity of said note all securities belonging to my estate and issued by the De Bardleben Coal Corporation aforesaid, shall remain in the hands of my executor. I consider this for the best interest of said corporation, and it is my desire, that the interest of said corporation be conserved so far as possible. It is further my will and I therefore direct, that no devisee, legatee or heir shall have the right to demand his share of said securities under the terms of this my will until after the maturity of the aforementioned note, and that my executor shall not make any distribution of said securities prior to that time.

"Item 9. It is my will, and I direct that in all cases where a devise is made any securities that are devised shall be provided for as far as possible proportionately out of each class of securities, and the shares shall then be equalized by payments out of monies then in the hands of the executor.

"Item 10. I have not overlooked, nor forgotten, my other nieces and nephews, but for reasons satisfactory to me have made no bequests or devises to any one of them, and it is my will and desire that they shall not have or receive any part of my estate.

"Item 11. Should any of the legatees or devisees entitled to take under this will die during my lifetime leaving issue of their body, such issue shall, except where otherwise provided, take the devise or bequest herein made to his, her or their parent, such issue taking per stirpes and not per capita.

"I hereby constitute and appoint the First National Bank of Birmingham, Alabama, a corporation organized under the laws of the United States, as executor of my estate, and I hereby expressly exempt it from giving bond as

such. I authorize and empower my said executor to sell and dispose of any portion of my estate without any proceedings in any court when, in its opinion, it becomes necessary so to do for the payment of the expenses of administration, or of any indebtedness due by me, or for reinvestment, if and when in its opinion it becomes necessary to do so to protect my estate from loss, but such last-named power shall be exercised only by and with the written approval of Henry T. De Bardleben, if living, previously obtained. I further authorize and empower my said executor to compromise and settle on such terms as it may think best any claim or claims had by my estate against any person or persons whomsoever, or any claim or claims had by any other person against my estate.

"In witness whereof, I have hereunto set my hand and seal this the 8th day of December, 1923.      I. N. Hanson. [Seal.]"

Robt. Benson Evins and Henry R. Howze, both of Birmingham, for appellant.

Extrinsic testimony cannot be received to control or vary terms of a will or aid in its construction, except to rebut a resulting trust or to explain a latent ambiguity. Lee v. Shivers, 70 Ala. 288. Testimony of H. F. De Bardleben was inadmissible. Code 1923, § 7721. The testimony of the attorney for testator was inadmissible. Code 1923, § 7658. The meaning of words intended by the testator, and not the usual meaning, is to be taken by the court. In re Wood, [1902] 2 Ch. 542; Carnagy v. Woodcock, 2 Munf. (Va.) 234, 5 Am. Dec. 470.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellees Annie Hanson Garrett, John Hanson, and Robert Garrett.

Percy, Benners & Burr, of Birmingham, for appellee Jones.

The intent of the testator is to be gathered from the will as a whole. Where there is a conflict between a general intent and a special intent, the general intent prevails. Words in a will shall be given their natural and proper sense, unless there is a clear indication to the contrary in the will. Hollingsworth v. Hollingsworth, 65 Ala. 321; Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Gurley v. Bushnell, 200 Ala. 408, 76 So. 324; De Bardelaben v. Dickson, 166 Ala. 59, 51 So. 986; Shuttle v. Barker, 178 Ala. 366, 60 So. 157; Baker v. Baker, 182 Ala. 194, 62 So. 284; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Hatcher v. Rice, 213 Ala. 676, 105 So. 881; Steele v. Crute, 208 Ala. 2, 93 So. 694; Jemison v. Brasher, 202 Ala. 578, 81 So. 80; Wilder v. Loehr, 211 Ala. 651, 101 So. 591; 40 Cyc. 1415. The same word is to be understood in the same sense when it occurs more than once in a will. 28 R. C. L. 222; 1 Page on Wills, 1414; Lloyd v. Rambo, 35 Ala. 709; Young v. Kinnebrew, 36 Ala. 97. Where there is an ambiguity or equivocation in a will, parol evidence is admissible to show any relevant facts as shedding light upon the testator's intention, including the declarations of the testator. 22 C. J. 1199; Gardner on Wills, 345; 2 Page on Wills, 2361; Chambers v. Ringstaff, 69 Ala. 140; Achelis v. Musgrove, 212 Ala. 50, 101 So. 670; Williams v. Oates, 212 Ala. 400, 102 So. 712; City Bank v. McCaa, 213 Ala. 579, 105 So. 669; Jordan v. Ringstaff, 213 Ala. 512, 105 So. 641. Testimony of a beneficiary as to statements made by testator is not in violation of section 7721 of the Code as the quantum of the estate will not be increased or diminished thereby, but only the matter of distribution. Alexander v. Alexander, 214 Ala. 291, 107 So. 835. The testimony of the attorney of a deceased testator as to the declarations of the testator at the time of the execution of the will is not privileged, and is admissible. Wigmore on Evidence, §§ 2314, 2321; 40 Cyc. 2380, 2394.

BOULDIN, J. The bill was filed by First National Bank of Birmingham, as executor of the will of Isaac Newton Hanson, deceased, praying, among other things, a construction of certain provisions of the will.

The question involved on this appeal turns on the construction of "securities" as used in item 5, saying:

"A large sum of my estate consists of the stock and securities of the De Bardeleben Coal Corporation, a corporation organized under the laws of the state of Delaware, and the devises hereinafter made in securities are to be discharged in the securities of said corporation. The said devises are as follows:" (See legacies (a), (b), (c), and (d), under item 5.)

Decedent's holdings in De Bardeleben Coal Corporation were $100,000 in first mortgage bonds, $44,000 in debenture bonds, and $550,000 in preferred stock.

The court below decreed:

"The term 'securities,' as used in the fifth item of said will, does not embrace and include the notes due to said estate by De Bardeleben Coal Corporation. The court construes the word 'securities' as used in the will to include the following and only the following: (1) The first mortgage bonds of De Bardeleben Coal Corporation; (2) the debentures of De Bardeleben Coal Corporation; and (3) the preferred stock of De Bardeleben Coal Corporation."

The notes referred to included, and in the main consisted of, a note of $106,000 devoted to a different use by item 7 of the will. The parties are agreed that the decree is correct in this regard.

The inquiry is, Did the testator intend that the preferred stock should be one class of "securities" from which the legacies under item 5 should be paid proportionately as per the provisions of item 9?

We have the benefit of excellent briefs on both sides. We cannot better express the

views of appellant than to quote the following from brief of counsel:

"In the fifth item of the will, Mr. Hanson who, at that time owned preferred stock in the De Bardeleben Coal Corporation, and first mortgage bonds and debentures of said corporation, drew a clear, sharp and emphatic distinction between the first mortgage bonds and debentures, which he denominated as 'Securities,' and the preferred stock, showing in the clearest and most certain manner that whatever the usual definition of the word 'securities' may include, he used it in this item of his will as 'Exclusive' of the preferred stock. The first paragraph of this item is as follows:

"'A large part of my estate consists of the stock and securities of the De Bardeleben Coal Corporation.'

"Here, in words not to be misunderstood, the testator classifies the investments which he had, which were connected with the De Bardeleben Coal Corporation, putting the stock in one category, and the other investments in that corporation in another category, the last of which he classified under the title of 'Securities,' as wholly distinct and separate from the stock. Then, in order that there might be no contention that the devises which he was about to make in said item of the will, included the stock, he continued:

"'And the devises hereinafter made in securities are to be discharged in the securities of said corporation.'

"Noting the care with which the testator differentiated between 'stock,' on the one hand and 'securities' on the other hand, it seems clear that he anticipated that the use of the term 'securities,' unexplained, or not defined, by himself might be claimed or held to include the preferred stock, and, therefore, in order that the basis for such a claim, or holding, might be utterly destroyed, he explained that he owned both stock and securities, and desired the devises made by him in securities to be discharged in securities. * * *

"The meaning of the testator, as expressed in item 5 of his will, would not be any clearer, more definite, or more precise than it is if he had said:

"'A large part of my estate consists of the stock and securities of the De Bardeleben Coal Corporation, and the devises hereinafter made in securities are to be discharged in the securities of said corporation, and not in the stock of said corporation.'"

On the other hand, counsel for residuary legatees, appellees, in like forcible language, present a line of argument to this effect:

That appellant lays too much stress upon the use of "stock and securities" in the conjunctive; that the construction insisted upon is at variance with the general scheme of the will; that in the common language of business, as well as in the language of many statutes, "securities" include stocks; that the term should be given its commonly accepted meaning; that, construing the will as a whole, "stocks and securities" are words of description rather than exclusion or differentiation; that they mean to cover all holdings in the De Bardeleben Coal Corporation,

thereafter designated throughout the will under the general term "Securities;" that, at most, the clause in question is equivocal or uncertain in meaning and subject to explanation by parol evidence.

The language employed in item 5 is suggestive of the construction presented by appellant; standing alone, we may say it is persuasive of that meaning. But we cannot say it is so clear and unequivocal as to be free from doubt on its face. Naturally we ask why employ such an indirect method to express a meaning easily expressed directly and clearly? · If the testator meant that these legacies should be paid with mortgage bonds and debentures alone, would it not have been clearly more apt to say so, rather than use the general term "securities," one inclusive of stock, when he meant to exclude stock? The testator first mentions the fact that a large part of his estate consisted of holdings in the corporation. This suggests he is thinking of those holdings as a whole, and proposes to deal with them according to a testamentary purpose running through the will.

In item 7 the testator mentions the note of $106,000 due his estate from that corporation as the cash resource from which the executor will have ready funds to meet cash legacies, and postpones their payment until the maturity of the note.

Item 8 is more direct. He declares "all securities" shall remain in the hands of the executor until that event, because "it is my desire that the interest of said corporation be conserved so far as possible." Here is a manifest intimation that in some way the interest of the corporation might be involved in an earlier distribution of such securities. Is there any apparent reason why the corporation would be more concerned in a delayed division of the bonds, than in the division of the stock, a security standing in secondary place of profit sharing and more likely to be sacrificed, if not carrying a voting power in the management?

In face value the stock exceeded all other securities of his estate. Giving it value by careful management without interference was a natural desire of the testator. It would seem, therefore, that "all securities" in item 8 includes stock. If not, why did he not give other directions as to stock? Throughout the will legacies are payable from cash or securities. Stock is not mentioned except in item 5. In any event, the larger portion of the stock passed under item 6, the residuary clause of the will. According to appellant's contention it would all pass under that clause. Says the testator:

"My securities shall be distributed proportionately among said three divisions as far as it is practicable."

Appellant points out that the 5,550 shares of stock could be equally divided into three

parts of 1,850 shares each, and there was no occasion to embrace the stock in the phrase "as far as practicable." This suggestion ignores the careful requirement in this item, and it is repeated in item 9 that "my securities shall be distributed proportionately."

[1-3] The more rational construction is that "securities," as used in items 6, 8, and 9, include stock, the aim being that legatees shall take in actual values the same proportions represented by the face values of their several holdings, and that all shall be held by the executor until the date of distribution named in item 8.

Words are to be given their usual and ordinary meaning, unless the context shows they are used in a more restricted sense. They are supposed to be used throughout the same instrument in the same sense, especially when intended to identify and describe the subject-matter of a bequest.

The parties agree that "securities" in business and financial circles include stocks and bonds, and that the testator, a business man of large holdings of the kind, knew this meaning. The argument turns upon whether in item 5 he has purposely made a distinction, a definition of his own. That he has apparently used "securities" in the inclusive sense throughout other items of the will weakens the argument that it was used in a restricted sense in item 5. It seems probable that "stock and securities" are here used to make certain that all his holdings in the corporation are included and thereafter covered by the general terms "securities." Synonyms are often used conjunctively in this same will.

Appellees industriously point out that "bonds and securities" are used in a like sense in section 8357 of the Code.

Our conclusion is that item 5 is ambiguous, equivocal, or uncertain in meaning; that parol evidence becomes admissible to show the relation of the testator to De Bardeleben Coal Company, to his business associates therein, and his own explanation of his intentions at the time he was considering the terms of his will and causing it to be prepared, and his comments on the language employed after it was prepared and handed to him for execution. Steele v. Crute, 208 Ala. 2, 93 So. 694; City Bank & T. Co. v. McCaa, 213 Ala. 579, 105 So. 669; Nat. Jewish Hospital for Con. v. Coleman, 191 Ala. 150, 67 So. 699; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154; Jordan v. Ringstaff, 213 Ala. 512, 105 So. 641; Gardner on Wills, § 107. This evidence went to show that De Bardeleben Coal Corporation had been recently formed by the merger of three companies. The new company had assumed liabilities which led to the cash loan of $106,000. His relation to the management was most intimate; that he was greatly interested in the new company getting established on firm footing, and that he, at the time, expressly instructed his agent who carried information to the attorney drawing the will that these legacies were to be paid from the stock and other securities proportionately; that when he read the draft of the will, testator inquired if it was clear that this was the meaning of item 5, and signed it on assurance that such was its meaning.

[4] Without going into further details, this evidence fully supports the decree of the court below. Conceding that the relation of attorney and client obtained between the testator and witness Robert P. Jones during the preparation and execution of the will, this fact did not render his evidence incompetent as privileged communications, under Code, § 7658. In will cases, the attorney of the testator is not precluded from giving evidence of communications relating to the execution or subject-matter of the will. The reasons for the rule are given in Wigmore on Evidence, § 2314. See, also, Wigmore, § 2394. For general line of authority to the same effect, see 40 Cyc. 2380, 2394.

Evidence of this character was considered without question of its competency in Achelis v. Musgrove, 212 Ala. 47, 101 So. 670.

[5] If we concede, without deciding, that Henry F. De Bardeleben had a pecuniary interest in the result of this suit, this did not render him incompetent, under Code, § 7721, as a witness in this case, involving only the claims of beneficiaries under the will, not the quantum of the estate. Alexander v. Alexander, 214 Ala. 291, 107 So. 835. We think the construction given item 5 in the decree is the more reasonable, looking at the will as a whole, without parol evidence either way.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.