82 So.2d 618

**TROY BANK & TRUST COMPANY, as Trustee,**

v.

**Oliver W. BRANTLEY et al.**

**4 Div. 767.**

Supreme Court of Alabama.

June 30, 1955.

Rehearing Denied Oct. 13, 1955.

Marion Rushton, Montgomery, and J. H. Wilkerson, Troy, for appellant.

John Patterson, Atty. Gen., pro se.

Oliver W. Brantley, Troy, Files Crenshaw, Steiner, Crum & Baker and Ball & Ball, Montgomery, Alto V. Lee, III, Dothan, and John W. Lapsley, Selma, for appellees.

MAYFIELD, Justice.

The genesis of the present litigation is found in the cases of Henderson v. Troy Bank & Trust Co., reported at 250 Ala. 456, 34 So.2d 835; and Tumlin v. Troy Bank & Trust Co., 258 Ala. 238, 61 So.2d 817. These two cases are commonly known to the Bench and Bar of Alabama as the Henderson Will Cases.

Presently before us for consideration are two decrees rendered on the complainant-appellees' collateral petition for an award of counsel fees and expenses incurred in the prosecution of this litigation. These two decrees awarded solicitors' fees, fixed the expenses, and taxed them as costs under the provisions of Section 63, Title 46, Code of Alabama 1940, and the decision of the Supreme Court rendered in the Tumlin Case, supra. It is from the trial court's decrees, rendered on this petition, that the appellant perfected this appeal here.

We are not here concerned with the principal controversy revolving around the

validity of the trusts created by the late Governor Henderson's will. This matter, after protracted litigation, has been laid at rest by the decisions in the two above-cited cases. The single inquiry brought into focus by the assignments of error, is the propriety of the nisi-prius court's action in awarding solicitors' fees and expenses to the appellees' solicitors, who were, in the main, unsuccessful in their major contention, and taxing these items as costs against the respondent-trustee.

The first decree in this proceeding, dated 17 March 1953, which overruled appellant's demurrer, not only delineates the facts of the present controversy, but sets out the contentions of the opposing parties and summarizes the law applicable to these contentions. For a better understanding of the present case, this decree is set out in extensio:

"Opinion and Decree **on** Complainants' Petition for Allowance of Attorneys' Fees and Expenses and Respondents' Demurrer Thereto.

"This matter has come on for hearing before the undersigned Judge on the 15th Judicial Circuit of Alabama, sitting in equity, in the Circuit Court of Pike County, in Equity, by special designation of the Chief Justice, and by agreement of all the parties concerned.

"The history of this litigation, and the result thereof, may be found in the decisions of the Supreme Court of Alabama in 250 Ala. 456, 34 So.2d 835; and [258] Ala. [238], 61 So.2d 817. In the latter decision of that Court, some of the Justices concurred, and some concurred in the result, or specially, and two of the Justices dissented. All of the Justices, however, concurred *Per Curiam* in rendering this judgment:

"'The judgment heretofore rendered is modified so that all costs which have accrued in this case be taxed against Troy Bank & Trust Company, as Trustee.'

"Following that, complainants filed their petition in this cause seeking allowance of a reasonable attorneys' or solicitors' fee, together with reasonable expenses incurred in the prosecution of this litigation, to be taxed as a part of the costs herein. Respondents filed a demurrer to that petition. It was argued orally before the court on February 20, 1953, and briefs submitted by both sides, and the matter taken under consideration by the court.

"Two approaches or contentions are involved; the one that the *Per Curiam* language of the Supreme Court, in taxing all costs against the Trustee, intended thereby to include as part of the costs attorneys' or solicitors' fees and expenses for complainants, and consequently that such is the law of the case, and cannot be changed except by the Supreme Court which rendered that judgment. The other is that if such be not the case, this court has the judicial discretion and right under the provisions of Title 46, Section 63, of the Code, to allow and fix for complainants such attorneys' or solicitors' fees and expenses, to be taxed as a part of the costs herein; and that the court should do so.

"To these, respondents say and contend, (1) that the Supreme Court's opinion and decision did not intend, and should not be construed, to cover complainants' attorneys' or solicitors' fees and expenses; and (2) that this court cannot and should not allow to complainants' attorneys or solicitors fees and attendant expenses, because the proceedings were adversary and also the result was contrary to complainants' contention.

"The pertinent provisions of Title 46, Section 63, of the Code are:

"'In all suits and proceedings in the * * * circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust * * * the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust * * * or any party in the suit or proceeding, and is authorized to tax as

a part of the costs in such suit or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court * * *.'

"This section of the Code is an amplification and amendment to and codification of an Act of 1903 (Acts 1903, p. 33). Unaided by statute, a court of equity has the power or right, in connection with the administration of a trust, to allow the Trustee and the Trustee's solicitors reasonable fees and expenses. So, also, should it become necessary for the Trustee to receive instructions of the court or a construction of the instrument, such fees and expenses would be allowable. As originally enacted, the Act of 1903 authorized the allowance of attorneys' fees only to the attorneys or solicitors representing petitioners in a suit or proceeding. As amended and codified, the present Code section authorizes the allowance of attorneys' or solicitors' fees to 'any party in the suit or proceeding,' which shall be taxed as a part of the costs in such suit or proceeding. This is not to say that under a literal construction of the language or words of the statute, attorneys' or solicitors' fees must or may be allowed in all proceedings and under all circumstances. The contrary is true, as stated in Bidwell v. Johnson, 191 Ala. 195, 67 So. 985 [987]:

" 'The statute by its language clearly shows that much is left to the sound discretion of the court.'

"This Code section does give broader powers to a court of equity with respect to the allowance of solicitors' or attorneys' fees for all parties than the court might otherwise have. The history of this legislative Act and its subsequent amendments and codification may be found in Dent v. Foy, 214 Ala. 243, 247, 107 So. [210]; Bidwell v. Johnson, 191 Ala. 195, 198, 67 So. 985; King v. Smith, 247 Ala. 1, 3, 22 So.2d 336; Clarke v. Clarke, 246 Ala. 170, 174, 19 So.2d 526.

"In support of their first contention, complainants argued and showed to the court, by way of an exhibit, that the Supreme Court in its initial opinion had taxed the costs in this case against complainants because, as the Supreme Court then stated, it was an adversary proceeding and the losing party should pay the costs, under the applicable statutes relating to all adversary proceedings, but that in the later opinion of the Supreme Court, that page or statement was removed, and the Supreme Court then, in a *Per Curiam* judgment, taxed all costs against the Trustee Appellee. Thus, according to complainants' contention, the Supreme Court intentionally changed its opinion, in which it had stated that the proceedings were adversary and accordingly that costs were taxable against complainants, and by its later opinion reached a different conclusion and taxed all costs against the Trustee Appellee, which could include reasonable attorneys' fee under Title 46, Section 63, of the Code. In support of this contention, this Court's attention was called to the statement made by the Supreme Court in its opinion in Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726 [734]:

" 'Let the trustee pay the costs.'

and it was stated by complainants by way of precedent that pursuant thereto not only were all court costs taxed to and paid by the Trustee, but in addition reasonable attorneys' fees and expenses of all parties, including the losing parties. In further support of the first contention, complainants stated in argument that in the case of Ramage v. Ramage, [258] Ala. [81], 61 So.2d 432 [436], where the Supreme Court in its opinion said:

" 'Let the trustee pay all the costs. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726.'

not only that the Trustee was required to pay court costs, but also attorneys' fees and expenses for all parties, including the losing parties. Since that suit was tried in this court, this court knows by way of precedent—whether or not it has in the case at bar judicial knowledge of the record in that case—what occurred in that case, viz.: that it did allow and fix for

all parties thereto a reasonable solicitors' or attorneys' fee plus reasonable expenses.

"In the light of the above, this court is inclined to the opinion that the Supreme Court, in its *Per Curiam* judgment, intended to tax the Trustee not only with court costs, but all other costs, including reasonable attorneys' fees and expenses which are permitted to be taxed under the provisions of Title 46, Section 63, of the Code above quoted.

"The second contention or issue involves the power *vel non* of a court to allow, under the provisions of said Code section, reasonable attorneys' or solicitors' fees to complainants, together with reasonable expenses in connection with this litigation; and also whether, if the court be empowered under said Code section, or otherwise, to make such allowance, the court in these proceedings, in its judicial discretion, should do so. In King v. Smith, supra [247 Ala. 1, 22 So.2d 338], the Supreme Court of Alabama said:

"'The decisions are uniform to the effect that in matters of this character much must necessarily be left to the sound discretion of the trial court.'

"The instant case, as this court knows and has been stated in its opinions of some of the Justices of the Supreme Court rendered in this cause, involved the construction of the late Governor Henderson's will. Complainants contended that some of its provisions violated certain rules of property viz.: the rule against perpetuity and the rule against accumulations. This, respondents denied, and respondents were successful in their contentions, though there were dissenting opinions rendered by some of the Justices of the Supreme Court, as well as concurrences in the result. The issue being raised by demurrer was necessarily one of law, and being one of law, necessarily involved the construction of the provisions of the will itself. The estate is a large one, alleged in the bill of complaint at the time of its filing to be in excess of $5,000,000. This court believes, as stated in some of the dissenting opinions of the Justices of the Supreme Court, it was advisable

or necessary for them to be construed, and such construction would benefit the estate and the Trustee in its administration thereof. In other words, the decisions and opinions of the Supreme Court and the issues involved in this litigation in this court all show that the proceedings were instituted in good faith, and on reasonable grounds.

"Since the Trustee was not a beneficiary under the will, and had no pecuniary interest in the result of the suit, other than its Trustee's fees, and the contentions of the parties had no effect on the quantum of the estate, then under the decisions of the Supreme Court of Alabama the proceedings were not adversary. Hanson v. First Nat. Bank, 217 Ala. 426, 430, 116 So. 127; Vaughn v. Vaughn, [258] Ala. [336], 62 So.2d 466, 472; dissenting opinions in Tumlin v. Troy Bank & Tr. Co., [258 Ala. 238] 61 So.2d 817.

"An exhaustive note and collation of authorities on the subject of allowance of attorneys' or solicitors' fees and expenses in such proceedings is contained in 9 A.L.R. 2d, beginning on p. 1132. That note follows the report of the decision In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126. In that case, the Supreme Court of Minnesota allowed to unsuccessful parties reasonable attorneys' fees, saying that, since the provisions of the will were ambiguous, a construction thereof was advisable or necessary.

"The use of the word 'ambiguous,' in my mind, is not determinative of the issue now before this Court for decision. In other words, whether words or language used in an instrument be ambiguous creates no different situation from whether unambiguous words or languages result in uncertainty and therefore ambiguity of the legality of such language or provisions of a will. In either instance, it would be a question for the construction of the court; and if doubt exists, such doubt should be removed in the interest of the estate and all parties concerned by a proper construction and decision of the court as to the meaning or legality of the provisions of the will involved.

"In Evans v. Safe Deposit & Tr. Co., [190 Md. 332] 58 A.2d 649 [656], the court of Maryland at first taxed the costs against the unsuccessful heirs and parties, but later, on motion for modification thereof, taxed them against the trust estate, saying:

" 'The same doubts, as to questions of law and construction of the deed, which warranted institution of the instant proceedings by the trustee also warranted the appeal. In the circumstances we think the costs, above and below, should be paid out of the estate.'

"There, doubt existed on questions of law and the construction of an instrument, which the court found to be tested in good faith by the parties, and accordingly taxed all costs against the estate.

"In Tolman v. Reeve, 393 Ill. 272, 65 N.E.2d 815, 824, the Supreme Court of Illinois said:

" 'We think it is apparent from the will and codicil here involved, and on this record, that there was an honest difference of opinion as to the proper construction to be placed on the will and codicil, and that the solicitors' fees allowed by the trial court to all parties should be paid from the general funds of the trust estate.'

"In Alabama, the statute above referred to specifically authorizes a court of equity to make allowances for reasonable attorneys' and solicitors' fees to all parties to the proceedings to be taxed as a part of the costs. This statute gives broader powers to a court of equity in such proceedings than it might otherwise have. 9 A.L.R.2d, at p. 1147.

"As stated by the annotator in that note or annotation at p. 1168, under the heading 'Effect of statute or lack thereof.':

" 'The allowance or disallowance of costs or attorneys' fees with respect to litigation involving an express trust, brought by a beneficiary thereof, may, of course, be controlled or affected by the provisions of applicable statutes. The terminology of the enactments which have been invoked in this connection varies so much from jurisdiction to jurisdiction that no general rules of construction can be said to have evolved with respect to them, and consequently little more can be done than to state individually the cases arising under them.'

"This court knows as a matter of precedent, whether or not it has judicial knowledge thereof, that in the case of Ramage v. Ramage, supra, which arose in and was tried by this court, reasonable attorneys' or solicitors' fees and their expenses were allowed by this court to all parties, including those who were unsuccessful in their contention. By way of precedent, the statement was made to the court in argument that in Thurlow v. Berry, supra, solicitors' fees and expenses were allowed from the trust estate to all parties, including those who were unsuccessful in their contention.

"Alabama cases illustrating the power of a court of equity in its judicial discretion to allow reasonable attorneys' fees and expenses to all parties to proceedings involving the administration of a trust, or the construction of a trust instrument, are: King v. Smith, supra; Clarke v. Clarke, supra; Dent v. Foy, supra; Bidwell v. Johnson, supra.

"This court judicially knows the record and history of this case, and is of the opinion that the proceedings herein were instituted and carried on by complainants in good faith and on reasonable grounds.

"For the foregoing reasons, the court is of the opinion that complainants' petition for the allowance out of the trust estate of reasonable attorneys' or solicitors' fees and expenses in connection with this litigation should be sustained and allowed, and that respondents' demurrer thereto is not well taken and should be overruled. Accordingly, let the Register enroll the following decree:

" 'This cause coming on to be heard, was submitted to the court upon complainants' petition for the allowance of reasonable at-

torneys' or solicitors' fees and expenses as therein prayed, and upon respondent's demurrer thereto. The court having heard oral arguments thereon by the respective solicitors of the parties herein, and written briefs by the parties having been submitted to the court, and the court having heard and considered the same, is of the opinion that said demurrer is not well taken and should be overruled,

" 'It Is Therefore Ordered, Adjudged, And Decreed by the Court that said demurrer be and the same is hereby overruled.

" 'Respondents may have 30 days from this date within which to file their answer to said petition if they be so advised.'

"Done this March 17, 1953.

"Walter B. Jones
Judge, Circuit Court, Pike County, In Equity (Sitting by Special Designated).

"Filed March 18, 1953."

After the rendition of the above-quoted decree, the trustees filed their answer and the court took testimony.

On 22 September, a further decree was entered awarding a very large sum to petitioners' solicitors as fees and for expenses incurred in this lengthy litigation. The reasonableness of this award is not brought under direct attack on this appeal. Rather, the position of the appellant seems to be that as this was "antagonistic litigation" complainants' solicitors are not entitled to any fees and expenses whatsoever, because they had failed to obtain a construction of the will in line with their contentions in the original cases. The appellant does point out, however, that it is within the inherent power of this court to modify the quantum of the original award.

Appellant's proposition of law IX states:

"In reviewing the reasonableness of the amount of attorneys' fees fixed by the trial court, the Supreme Court will consider the entire record and base its own judgment thereon. There is no presumption in favor of the ruling of the court below when this court knows as much or more about the case as the trial judge did and when the prime consideration is the question of law as to the right of petitioning attorneys to receive any fee at all for bringing antagonistic litigation against the estate."

However, no evidence was introduced below tending to show the unreasonableness of the award to the appellees' solicitors and no argument is advanced in the brief and argument of appellant directed to the amount of the award.

In appellant's fourth assignment of error, it is contended that the trial court erred "in awarding petitioner $110 (an obvious and self-correcting error of the pen) as fees and expenses to be paid by the Troy Bank & Trust Company and taken out of the trust fund and assets of the estate of Charles Henderson in its possession * * *". This assignment is not sufficient to challenge the amount or reasonableness of the award.

The trial court rested its decree on three grounds. First, the chancellor's common-law power to award solicitors' fees to the contending parties out of the corpus of the trust; secondly, this court's opinion in the case of Tumlin v. Troy Bank & Trust Co., supra, which found the law and assessed all of the costs against the trustee. And, thirdly, the statutory authorization found in Section 63 of Title 46 in cases involving the administration of a trust to pay attorneys' fees to "any party in the suit or proceeding" and to "tax as a part of the costs in such suit or proceeding such reasonable attorney's fee".

The trial court rested its decision upon these three above named-pillars. Before examining the Alabama cases that reflect light upon this controversy, it might be well to consider the general principles involved as they have been treated by other jurisdictions. The rationale of the Alabama cases has undoubtedly been affected by a consideration of principles conceived to be controlling by the courts of some of our sister states.

Two general theories should be borne in mind as we dissect these decisions. The first we will refer to as the "common fund" theory. This concept is well expressed in the following federal cases: Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; Buell v. Kanawha Lumber Corp., D.C., 201 F. 762. Reduced to its lowest common denominator, this concept embraces a situation where one litigant has proceeded alone at his own expense and has either created, protected, or preserved a fund in which others are entitled to share. In this situation the litigant may clearly recover his costs, including attorneys' fees out of the common fund.

The second theory, which is the basis of similar recoveries, arises in situations where a testator has expressed himself so ambiguously as to make it necessary or advisable to institute an action to obtain a construction of his will. Here also, it is proper to order payment out of the estate of reasonable fees for the attorneys of the parties instituting the action. See Annotation 79 A.L.R. 536; 142 A.L.R. 1470. These two theories embody two separate legal principles and their application must not be confused.

In litigation of the type now at bar, the courts of our sister states have not always recognized the twain principles, or else they have been unwilling to follow the logical line of demarcation between them. The courts which pay lip service to the second theory usually refuse the allowance of attorneys' fees to an heir asserting a construction of an ambiguous will, when the asserted construction would render a provision of the will void or terminate a trust therein created. See Thatcher v. City of St. Louis, 335 Mo. 1130, 76 S.W.2d 677; In re Hughes' Estate, 78 Ohio App. 143, 69 N.E.2d 216; Tramell v. Tramell, 162 Tenn. 1, 32 S.W.2d 1025, 35 S.W.2d 574. This conclusion is probably reached upon the reasoning that the heir has not attempted to preserve or protect the fund but has rather asserted a construction which would destroy the intended fruits of the trust and pluck them for his personal benefit. It is interesting to speculate whether courts which have reached this conclusion have not changed theoretical horses in the middle of their decisional streams. The validity of allowing fees to the contending parties in suits for the construction of ambiguous wills is not that a common fund has been increased, preserved or benefited; but, rather that the testator by choosing the words that provoked the controversy thereby subjects his estate to the financial consequences of the suit.

What is the logical difference between a case where the testator's phraseology was ambiguous and a case where his intention is clear but the legal validity of a provision embodied in the will is doubtful? In the first case, the uncertainty is produced by words selected by the testator, and in the other, it arises from the lex momentus as applied to the plan or scheme selected by the testator. There is no real distinction either in principle or in practical application. But, as the case before us involves the construction of ambiguous language, as well as the possible violation of established legal principles in the execution of the testator's scheme, it is not profitable to further pursue the matter.

Theoretical confusion is compounded by those cases that enunciate the rule that a party may recover attorneys' fees from the estate for the construction of an ambiguous will where the suit is instituted *merely* for the purpose of securing a construction of the will; but attorneys' fees will be denied where the heir attempts to obtain something for himself by a will construction which he advocates. See, Craw v. Craw, 210 Ill. 246, 71 N.E. 450; Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104. The rationale of these cases is supported by neither reason nor logic. These courts assume that the world is populated by kindhearted heirs with gold-lined purses who altruistically institute costly suits for the sole purpose of being of aid and assistance to others. While this assumption would do credit to mankind, it overlooks the realities of human nature in our highly commercialized society. Few suits for the construction of trusts would be instituted if the party bringing them did not hope to personally gain from

the prevalence of his contentions. The statements in these cases seem to be directly in conflict with pronouncements from the same jurisdictions that the hope of personal benefit by the party instituting the suit does not determine the propriety of the allowance of fees out of the estate. See, Glaser v. Chicago Title & Trust Co., 333 Ill.App. 550, 77 N.E.2d 844; Lang v. Taussig, Mo.App., 1946, St. Louis, 194 S.W.2d 743, 748.

One is irresistably drawn to the conclusion by an analysis of the above cases that the courts did not feel that the equities of the particular controversy before them lay on the side of awarding fees. Further, they indulged in some rather loose and confusing language in reaching this conclusion. The question in each case should be *what* happened and not *why* it happened; except as the question of motivation bears on the question of good faith in determining if the suit was "reasonable and necessary", the result "beneficial" and whether the court abused its sound discretion in finding that the institution of the litigation was of genuine assistance in determining the questions involved in the trust.

In Ingraham v. Ingraham, 169 Ill. 432, 48 N.E. 561, 49 N.E. 320, the bill was brought by an heir who prayed for a construction of a testamentary trust holding that its establishment was a violation of the rule against perpetuities and accumulations. The trust was upheld in both the trial and appellate courts and attorneys' fees out of the estate were awarded the petitioner. In Singer v. Taylor, 91 Kan. 190, 137 P. 931, the daughter of the deceased contested the will on the grounds of undue influence, and also asserted that a certain clause was ineffectual to transfer a large part of the estate. She lost both contentions but was awarded attorneys' fees for that part of her litigation which involved the construction of the will. The fact that both sides joined in the prayer for the construction does not seem to have materially influenced the rationale of this case. Whatever may be the qualifications that subsequent decisions from the same jurisdiction have placed upon these cases, they seem to us to be sound and worthy of approval.

Probably, the foreign case closest in point to the case at bar is that of Schenectady Trust Co. v. Emmons, 263 App. Div. 542, 33 N.Y.S.2d 688, 689:

"This was an action in equity for the settlement of the accounts of a trustee under a trust agreement and involved the judicial construction of such agreement. * * * Appellant Nathaniel D. Emmons claimed an interest in the trust and was allowed to intervene in the action although it was finally adjudicated that he had no interest in the trust fund. * * * It cannot be denied that appellant pleaded earnestly for what he believed to be the proper construction of the trust agreement. Through his attorneys he filed extensive briefs and, at least in this Court, made an able argument and was of genuine assistance to the court in determining the questions involved. * * * Under all these circumstances the Special Term had ample power in the exercise of its sound discretion to make an allowance to appellant. Provost v. Provost, 70 N.Y. 141; Herrington v. Robertson, 71 N.Y. 280; Barnes v. Midland Railroad Terminal Co., 218 N.Y. 91, 112 N.E. 926. It was not necessary that the appellant succeed in the action at the Special Term before that court could exercise this discretion. 'This does not mean the party who is technically successful; that is, who obtains a decree in his favor upon the question contested. It means the party whose behavior in the circumstances provoking the litigation, whose situation in relation to the estate, or the particular subject in controversy is such, as that it is equitable and just, that he be remunerated for his expenses in the litigation'. Noyes v. Children's Aid Society of New York, 70 N.Y. 481."

The court went on then to speak of the New York statute, somewhat similar to our own:

"Furthermore, Section 1513 of the Civil Practice Act authorizes an additional allowance 'to any party'. Kap-

lan v. Koenig, 225 App.Div. 675, 231 N.Y.S. 216, affirmed 250 N.Y. 624, 166 N.E. 348. This statute has a counterpart in Section 278 of the Surrogate's ·Court Act, which authorizes that court to allow to 'any party' such sum as the ·court may deem reasonable, *and it is the accepted practice in a construction proceeding to make an allowance to any party who has been of assistance to the ·court, whether successful or not.* Consequently the Special Term was in the first instance clothed with *ample authority to exercise its discretion* in favor of the appellant Nathaniel D. Emmons by an award of an allowance to compensate him in some measure for the expenses to which he had been put in this litigation and from which the trust estate and all of the parties interested therein have received some benefit." [Emphasis supplied].

We, therefore, conclude that as far as the general established principles of equity are concerned, that the trial court did not abuse its discretion in the instant case. We must now determine whether the Alabama rule has been definitely established contrary to those general equitable principles.

Early Alabama cases express hostility towards the concept of making an estate pay the attorneys' fees of losing parties in the litigation concerning the estate. See, Grimball v. Cruse, 70 Ala. 534; Foster v. Foster, 126 Ala. 257, 28 So. 624; Jordan v. Farrow, 130 Ala. 428, 30 So. 338. Apparently, to alleviate the harshness of such decisions in meritorious cases, and return to the general equitable principle, our legislature, in 1903, passed the act which is now known as Section 63 of Title 46 of the Code of Alabama 1940. This section, as quoted in part above, contained the provision that attorneys' fees could be paid to· "any party in the suit or proceeding".

The clear verbage of this provision would indicate an intent to allow the trial court, in its sound discretion, to award attorneys' fees in meritorious cases involving the construction of trusts, even though litigation was "antagonistic". But, in applying this statute, our court seems to have been inordinately influenced by the "common fund" theory. In Bidwell v. Johnson, 191 Ala. 195, 67 So. 985, 987, it is stated:

"It is insisted that a literal construction of the act would authorize the taxation of an attorney's fee for the payment of an attorney for any party to the suit, whether such services were for the common benefit of all or not. * * *

" * * * such a construction as contended for by counsel would lead to inequitable and unjust results; * * *."

The court then submitted the proposition that the attorney's fee had to be for the benefit of all and stated:

" * * * This construction rests upon the principle akin to that recognized in such cases as Strong v. Taylor, 82 Ala. 213, 2 So. 760; Grimball v. Cruse, 70 Ala. 534; Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Central R. & Bkg. Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915—wherein the principle is stated that where there is a common trust or fund and suit is instituted by one for the benefit of all, it is not just that one alone should bear the burden when others receive the benefit." [The original *common law rule, prior to the statute.*]

This construction was followed by later Alabama cases in the decisions to a point that the rule is solidified that before a party may recover his attorney's fee incurred in the administration of a trust or estate, such service must have inured to the benefit of the common estate. Coker v. Coker, 208 Ala. 239, 94 So. 308; City Bank & Trust Co. v. McCaa, 213 Ala. 579, 105 So. 669; Dent v. Foy, 214 Ala. 243, 107 So. 210; Farmers Bank & Trust Co. v. Borroughs, 217 Ala. 97, 114 So. 909; King v. Smith, 247 Ala. 1, 22 So.2d 336; Kimbrough v. Dickinson, 251 Ala. 677, 39 So.2d 241.

The fact that the principle embodied in the statute is *akin* to the "common fund

theory" does not, of necessity, mean that it is identical. The statute encompasses the "common fund theory" but is not so circumscribed. In the trial court's consideration of what is a benefit to the estate or trust, it was not limited to the question of what would have been such a benefit as would have authorized a recovery of attorney's fee under the "common fund theory". To reason otherwise would be a judicial pronouncement that the statute did not change the law.

The Act says, that in a proper case, attorneys' fees may be taxed as "a part of the costs". Three cases recently before this court involved the construction of a testamentary trust. In each case this court required that the trustee pay *all* of the "costs". Ramage v. Ramage, 258 Ala. 81, 61 So.2d 432; Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726; Clarke v. Clarke, 246 Ala. 170, 19 So.2d 526. Attorneys' fees were properly a part of the "costs" in these cases. We are advised that they were allowed and paid without contest.

In the instant case where the "estate" owned the majority control of the "trustee" bank, the trustee would naturally have been most reluctant to have sought a construction. This involved ownership and control of the trust corpus, appellees compare to a snake's effort to swallow its own tail. The issues raised were vital to the administration of the trust—even to its very existence. The trust was benefited by having the cloud of illegality removed from the legal actions of its trustee. The trial court was authorized to invoke its discretion to award the appellees attorneys' fees out of the trust.

The appellant argues that unless this court reversed the award made by the trial court that "no trust in Alabama will be safe". This argument overlooks the fact that such an award rests in the sound discretion of the trial courts, and that unless the institution of the action was reasonable, necessary and beneficial to the trust, and gave assistance to the trial court in deciding the vital issues involved, the courts would not and could not make awards of attorneys' fees in "antagonistic" litigation. We have

too much confidence in the trial courts of Alabama to be disturbed by the fears that plague the appellant. And if such an abuse of discretion should occur in the future, it is removable here. We conclude that the trial court, in the instant case, did not abuse its discretion and that the decree allowing the award is due to be affirmed.

Affirmed.

SIMPSON, J., concurs in the opinion.

LAWSON, GOODWYN and MERRILL, JJ., concur specially.

LIVINGSTON, C. J., and STAKELY, J., dissent.

LAWSON, GOODWYN and MERRILL, Justices, concurring specially.

There are five assignments of error, but the brief filed in this court on behalf of the appellant presents for our consideration the sole question as to whether or not the trial court erred to a reversal in awarding attorneys' fees in any amount for the attorneys who represented the complainants in the so-called Henderson Will Cases. See Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835; Tumlin v. Troy Bank & Trust Co., 258 Ala. 238, 61 So.2d 817.

In Tumlin v. Troy Bank & Trust Co., supra, the trial court dismissed the complainants' bill after sustaining demurrer thereto and taxed the complainants with the costs. From that decree the complainants appealed to this court. On original submission a decree was entered in this court affirming the decree of the trial court in all respects. Application for rehearing was overruled, but only after all of the Justices of this court who participated in the case concurred in ordering that the decree entered on original submission be modified "so that all the costs which have accrued in this case be taxed against Troy Bank & Trust Company, as trustee." A decree was forthwith entered in this court in accordance with that order.

Our decree taxing the costs against the trustee did not purport to include attorneys' fees and it was not a directive to the trial court to tax such fees as a part of the costs in the case.

But the fact that we did see fit to tax the costs against the successful party in this litigation, although without doubt the unsuccessful parties had as their sole objective the destruction of the charitable trust provisions in Governor Henderson's will, is a factor which, in my opinion, has considerable bearing on the question of instant concern.

The taxation of costs in equity causes is governed by Equity Rule 112, Code 1940, Title 7, Appendix, which in pertinent part reads: "Costs will be imposed by the court or judge having jurisdiction at such times during the litigation as he deems proper, subject to correction for improper exercise of his discretion, and may be apportioned by him between the parties * * *."

In Dozier v. Payne, 244 Ala. 476, 477, 14 So.2d 376, 377, Mr. Justice Bouldin, writing for the court, said:

"This appeal is to review the decree of the court below taxing the successful complainant in equity with all the costs of suit, amounting to $29.25. The taxation of costs in equity causes is governed by Equity Rule 112, Code 1940, Tit. 7, Appendix, which, in pertinent part, reads: 'Costs will be imposed by the court or judge having jurisdiction at such times during the litigation as he deems proper, subject to correction for improper exercise of his discretion, and may be apportioned by him between the parties * * *.'

"This rule needs no elaboration. It follows the long established rule in equity vesting in the chancellor a discretion in the taxation of costs; but, says the rule, 'subject to correction for improper exercise of his discretion.'

An 'improper' exercise of discretion appears when the record, after indulging all fair intendments in favor of the ruling, discloses the taxation of costs was unjust and unfair. Otherwise the action of the trial court should not be disturbed.

"The general rule at law, usually followed in equity, is to award the costs in favor of and not against the successful party in the suit. As a rule this is just. * * *"

So our action in taxing the trustee, the successful party, with all of the costs of the litigation, thereby reversing the action of the trial court in that regard, can be justified only on the ground that we were of the opinion that after indulging all fair intendments in favor of the trial court's ruling relative to the taxation of costs, we concluded that such ruling was unjust and unfair. That conclusion was based unquestionably on our belief that the legality of the charitable trust provisions of the will was not free from doubt and that a judicial determination that those provisions were valid redounded to the benefit of the trust estate, and for that reason it should bear the costs of the litigation, irrespective of the fact that the litigation was conceived and prosecuted in an atmosphere entirely antagonistic to the maintenance of the charitable trusts.

In view of the position taken by all of the participating Justices relative to the taxation of costs, we are not inclined to hold that the trial court erred in decreeing that fees of the attorneys representing the original complainants be paid out of the trust estate. Therefore, we concur in the conclusion reached in the opinion prepared for the court by Mr. Justice MAYFIELD, but on that ground alone. We do not wish to concur with all that is said in that opinion for the reason that we feel that, whether intended or not, the effect of that opinion may be to override many decisions of this court of long standing.