25 So.2d 726

**THURLOW et al. v. BERRY et al.**

**6 Div. 386.**

Supreme Court of Alabama.

April 18, 1946.

Wm. N. McQueen, Atty. Gen., Jas. F. Matthews, Asst. Atty. Gen., and Bowers, Dixon & Dunn, Frank M. Dixon, Henry Upson Sims, and Wm. Logan Martin, all of Birmingham, for appellants.

Lange, Simpson, Robinson & Somerville, Jas. A. Simpson, R. L. Lange, and Cabaniss & Johnston, all of Birmingham, for appellees.

SIMPSON, Justice.

Harvey G. Woodward, of Birmingham, Alabama, died November 18, 1930.

Prior to June 10, 1929, he created a corporation known as the Alabama Educational Foundation and conveyed to it certain properties and securities by way of gift.

On June 10, 1929, he executed a will, which was admitted to probate shortly after his death, in which he made the First National Bank of Birmingham trustee of a residue set up by it, with Item Tenth containing details for the management of the trust and disposition of the income. In section (g) of Item Tenth he made provision for a Board of Governors (naming them) to direct the application of the income for the educational purposes as outlined. In section ·(h) of Item Tenth he directed the trustee alone to invest, manage,

care for and control all the property of the trust, and the Board of Governors were charged with the duty of carrying into effect the educational trusts therein provided, and directing the expenditure of the income (quoting from section (h)) "and the principal thereof for the purposes and in the manner herein provided. To this end, I vest in said Board of Governors the power and authority to do any act or thing and to make any expenditure of funds of said trust estate which in the opinion of said Board of Governors is necessary or desirable in carrying into effect the provisions thereof, subject only to the requirement that said Board of Governors shall act in good faith." They serve without compensation.

In section (h 4) of Item Tenth, direction is given them in making expenditure for the original school unit, whatever its size (or any subsequent unit or addition to an existing unit), that it shall be done only if and when there shall remain in the trust estate property or securities other than school properties after deducting the cost of that unit, which will produce income, after paying all expenses connected with the operation of the schools, equal to 200% of the cost of the operation of the unit or units then in operation, if any, and the estimated cost of the operation of the proposed unit, and in addition, there shall be other income producing assets (excluding school properties) of the value of $3,000,000.

In section (j) of Item Tenth, it is provided that as and when the size and condition of the trust estate will safely permit it, the Board of Governors shall establish a small school of fifteen to thirty boys, with more or less temporary buildings, which may be enlarged and others added. It was contemplated that this school, if successful, should grow to such size as to become the first of the units provided for in section (h 4), supra.

Great detail is set up as to the location, curricula, management and size of the various school units. Each unit should operate for twenty-five years before it shall be determined whether it is successful according to the standards set up. "If the school—meaning all the units—is not successful, after twenty-five years of operation" certain restrictions may be changed (section k).

In section (m) it is provided (under conditions) that if the school be declared unsuccessful, the trustee is ordered to liquidate the school property. The estate should then be divided into two equal parts, one part to be conveyed to the Massachusetts Institute of Technology at Cambridge, Massachusetts, for educational purposes, but only on certain named conditions. The other part shall remain in trust, with the income to be used for advancements to boys under twenty-one years of a certain type to provide for the expense of their education. If the Massachusetts Institute of Technology shall not comply with the conditions, its share shall be used as is provided for in the other part.

In the last paragraph of Item Tenth it is provided that he has frequently stated his opinion and desire and made suggestions, but that it is not his intention that such statements shall be binding on the Board of Governors, but merely indicate his opinion as he then sees conditions and the final decision shall be made at a future date. One of the controversies giving rise to this appeal is the contention of some members of the Board, as against the contrary opinion of other members, that this concluding paragraph invalidated the manifest mandatory provisions of section (h 4) as to the minimum back-log requirements for the establishment of the school units.

On the next day (June 11, 1929) after the execution of the will the Alabama Educational Foundation made a declaration of trust to itself as trustee with the same uses and purposes as expressed in Item Tenth of the will, and providing that the Foundation, as trustee, shall have all the rights, duties and powers and discretion given the First National Bank as trustee under said Item Tenth; that, during the lifetime of Harvey G. Woodward, the trustees of the Foundation shall act and have the same powers as provided for the Board of Governors in said will; after his death, the First National Bank shall become trustee in lieu of the Foundation, with the same force and effect as set up in Item Tenth of the will setting

up the testamentary trust. The trustees of the Foundation (aside from Woodward) were among those designated in Item Tenth as the Board of Governors. There is doubt expressed whether that declaration by the Foundation had the effect without a deed to the bank, upon the death of Mr. Woodward, to make the bank trustee of both trusts, with the same terms and conditions applicable to each, and with the Board of Governors having the same authority in respect to each trust. Reese v. Ivey, 162 Ala. 448, 50 So. 223; Allison v. Little, 85 Ala. 512, 518, 5 So. 221.

■ Certain principles of law ought to be understood in anticipation of the construction of the trust instruments. § 146, Title 47, Code 1940, limits trusts for accumulation only (with exception not here material) to ten years, and has application to charities. 48 C.J. 997, § 86. The statutory rule as to perpetuities in respect to land prevailed when the trust will became effective, December 23, 1930, and when the Alabama Educational Foundation made its declaration of trust, January 11, 1929. §§ 6922, 6921, Code 1923 (§§ 16 and 17, Title 47, Code 1940). But neither the statute nor common law applicable to perpetuities affects a trust for charities so long as the property vests in the trustee immediately, even though its charitable use may be postponed. 48 C.J. 986, § 78, 947, § 16.

■ Authorities seem to agree that after the ten year limit under § 146, supra, has expired, the accumulations cannot ordinarily be a permanent addition to the corpus (48 C.J. 995, note 41), but "the trustee may make temporary accumulations as are a reasonable provision against future payments to be made by them" according to the trust instrument, or be used to replenish the corpus on account of depletions. Id., note 42; Livingston v. Tucker, 107 N.Y. 549, 14 N.E. 443. See Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

■ This trust will contains no express provision for accumulations only. At the time it was executed testator had an estate, including the foundation, which was probably sufficient to justify the conclusion that it would not need additions to the corpus

to carry out his purposes. Annuities were provided to be payable out of the trust for his wife and others. She dissented from the will and thereby depleted the corpus to a large extent. In construing a will to determine whether accumulation merely is provided, the court gives a constructional preference in favor of a finding that income is "undisposed of" rather than to be "accumulated"; in favor of "finding that retention of income is in the course of judicious management of the trust, rather than an accumulation." Restatement of the Law of Property, § 446(b), Chapter 36.

The will contemplates additions to the trust corpus otherwise than by accumulations.

It has been since July 1, 1932, that the testamentary trust has accumulated; but since July 11, 1929, that the Foundation trust became effective. The accumulations from neither have been sufficient to restore the depletions alleged in the pleadings to have occurred. It would seem difficult to conclude from the pleadings, as framed, that the will provides for accumulations only.

■ If the conditions stipulated in section (h 4) of Item Tenth of the will have not now occurred, having had a reasonable time to replenish depletions in the corpus of the trust property in the process of "judicious management," the board should proceed to handle the income otherwise than on the conditions there provided. Not knowing just what they should do with it, they seek the guidance of equity, both in the original and cross-bill. This, as we will show, is the appropriate procedure for them. The original bill expresses the view of two of the Board members that one course should be pursued, and the cross-bill expresses a different view, that of the majority. They both assume in one aspect of their contentions that the conditions set forth in section (h 4) of Item Tenth of the trust will for the construction of the first or original unit may not be met in the reasonable contemplation of the Board which is charged with the duty of establishing it. But cross-complainants seem to wish to have that matter carefully determined by the court upon a full hearing.

■ This being a charitable trust, the question arises therefore of the applicability of the principle of equitable approximation as declared in § 57, Title 58, and in § 145, Title 47, Code, as then existing, effective in Alabama without such statute. Heustess v. Huntingdon College, 242 Ala. 272, 5 So.2d 777. The cy pres doctrine, § 145, Title 47, Code, was not in effect in Alabama when the trusts came into being, and does not seem to apply to what is proposed here, if it were in effect. 11 C.J. 360, 362; see also 14 C.J.S., Charities, § 52; Crim et al. v. Williamson et al., 180 Ala. 179, 60 So. 293; Carter and Wife et al. v. Balfour's Adm'r, 19 Ala. 814; Tarver et al. v. Weaver et al., 221 Ala. 663, 130 So. 209.

■ The principle of approximation authorizes a court of equity "to vary the details of administration," in handling the fund, from what is precisely provided in the will, if they have or shall become impossible or impracticable of observance exactly as set up, in order to secure the object for which the trust was created. Dunn v. Ellisor, 225 Ala. 15, 141 So. 700. The distinction between that and cy pres is sometimes shadowy. 11 C.J. 358, § 74. See also 14 C.J.S., Charities, § 50.

It is the respondents, who are also cross-complainants, who contend that the conditions set forth in section (h 4), Item Tenth, are not mandatory, as manifested by the last paragraph of Item Tenth and other features; and further that section (J) of Item Tenth authorizes the Board of Governors to establish a school on a small scale if, in their judgment, the trust estate will safely permit, though the conditions set forth in section (h 4), supra, may be impracticable of fulfillment, in the foreseeable future. But they do not concede this latter situation to be in effect. They also think that the trust estate may now safely proceed as there authorized, and propose to do so, with the approval of a court of equity. That theory does not seem to need approximation, but only construction.

The original complainants, on the other hand, contend that the procedure in section (j), supra, is also dependent upon the same conditions as in section (h 4), supra, and mandatory, and that since those conditions do not exist the court should direct them to proceed under section (m) of Item Tenth, since it was the manifest intent of the trustor for the Board to act under section (m) if the provisions for school units become impracticable of fulfillment. That theory may need approximation.

Cross-complainants also contend that if the conditions of section (h 4) are mandatory and applicable to section (j) and are not reasonably attainable, it would be within the power of the court to authorize the Board of Governors in their discretion to proceed as under section (j) without their fulfillment, or to change, alter or modify the requirements of section (h 4), if necessary to secure the object for which the trust was created, and thereby vary the details of administration. They allege that in the exercise of that discretion they propose to proceed as under section (j) and without a fulfillment of all the details and conditions set forth in section (h 4), if that has not been accomplished. This would necessarily bring under consideration the applicability of the doctrine of approximation.

So that the issue seems to be clearly drawn, as to whether the conditions of section (h 4) are mandatory and have application to section (j), and have been fulfilled. If they do not apply to section (j) or have been fulfilled, the Board is vested with a discretion which is conclusive of its power to proceed under section (j), or otherwise, in the exercise of good faith.

■ If those conditions (h 4) do apply to section (j) and are mandatory, and not fulfilled, then it would seem that the original complainants and cross-complainants may each present their contention to the court and have it determine on the principle of approximation whether it would best serve the purposes of the will to proceed to set up a school in their discretion or to act under section (m). It would seem therefore that the parties are at liberty to have the court direct them in this regard, but since the trial court has not yet considered and determined the questions there is nothing here for us to review in that connection.

Counsel for appellants have presented able briefs, persuasive to the effect that section (h 4) is mandatory and controls

all features of the trust and to this end we are urged to conclude the merits of the controversy, by now so construing the will. From the authorities hereafter cited it will conclusively appear that this court from its early history has steadfastly refused to construe a will, when the question arises as here presented, except to determine whether it presents a status for judicial construction.

Expressive of our position is the observation in Ashurst v. Ashurst, 175 Ala. 667, 670, 57 So. 442, 443: "It is earnestly insisted on this appeal by both appellants and appellee that we should so far construe the will in question as to determine whether certain clauses therein are valid or void. We cannot accede to the correctness of this proposition. Our jurisdiction in this instance is appellate only, for the purpose of reviewing the correctness of the interlocutory decree of the chancellor from which the appeal is taken. The chancellor has not yet passed upon the merits of the case; nor can we act on this appeal further than to affirm or overrule the decree rendered by him. If we affirm the decree of the chancellor overruling the demurrer, then the case will proceed on its merits and the chancellor will have to construe the will; and on an appeal from a decree construing the will, or settling the rights of the parties thereunder, we could review such decree, and, if necessary, construe the will. But we cannot construe the will on this [special] appeal, and any attempt to do so would not be binding on us nor on the parties."

Opposing counsel urge that the precedent be sustained, and correctly so we think. Despite the possible public interest to be served by an early determination of the issues, we are reluctant to ignore this salutary rule, so necessary to orderly procedure, by indulging here in dicta to adumbrate a legal postulate for admonishment of the trial court on questions it has not yet considered and ruled on. Gilmer v. Gilmer, 245 Ala. 450, 453(3), 17 So.2d 529; Hawkins v. Tanner, 243 Ala. 641, 11 So.2d 351; Reid et al. v. Armistead, 224 Ala. 43(2), 138 So. 537; Ashurst v. Ashurst, supra; Carroll v. Richardson, 87 Ala. 605, 6 So. 342; Sellers v. Sellers, 35 Ala. 235. The most we can do is what we have done, that is, give the cause a preferential status on the decision docket to expedite a sooner determination by the trial court.

The precise question before us brings to review the decree of the trial court overruling the demurrer to a single phase of the appellee's cross-bill as amended. The original bill was held to be sufficient against the appellee's demurrer.

By their cross-bill the appellees seek definitive interpretation and advice as to the foundation trust and a declaratory decree in regard thereto. They want advice and instruction as to the status of the property of the Alabama Educational Foundation and whether it is a part of the trust property under Item Tenth of the trust will, and the authority of the Board of Governors and Trustee in the premises.

The cross-bill advances the theory that the Foundation assets by its declaration of trust were subordinated to the trust purposes declared in Item Tenth of the will, thereby in effect liquidating or suspending its general authority and resulting in imposing in the Trustee title, equitable at least, to the Foundation assets. The pleading of appellants contends that the Foundation trust is no part of the testamentary trust and seems to repudiate any justiciable connection between them.

The court ruled that in so far as the cross-bill sought a construction of the will relating to the matters prayed for in the original bill, the cross-bill was useless, and the demurrer was sustained to this aspect. To the extent, however, that it required a construction of the declaration of trust by the Foundation relating to the status of its trust assets and instructions with reference thereto, the cross-bill was held well filed and the demurrer was overruled. This latter ruling is the decree from which the appeal has proceeded and is the only matter of substance properly before us for decision.

The appellants insist that the cross-bill was an unjustifiable extension or modification of the original bill and that adequate relief was available to appellees on answer to the original bill.

The bill and cross-bill are respectively presented by different members of the Board of Governors, not by the Trustee so

designated, so they have no status except in the discharge of the duties of a fiduciary. They are not beneficiaries but in reality trustees with only specified powers. They have, though, the same right and power to invoke the aid and instructions of a court of equity as to the meaning of the trust and the manner of its enforcement as any other trustee and under the same circumstances.

■ The rule is that equity will interpret a trust instrument and give instructions at the instance of a trustee when the instrument is ambiguous and uncertain in its meaning or difficult and embarrassing in its interpretation. Kimbrough v. Dickinson, Ala.Sup., 24 So.2d 424(1);[1] Gilmer v. Gilmer, supra; Mosaic Templers of America v. Raife, 215 Ala. 159, 110 So. 67; Carroll v. Richardson, supra; Sellers v. Sellers, supra; Hoglan v. Moore, 219 Ala. 497, 122 So. 824; First National Bank of Montgomery v. Sheehan, 220 Ala. 524, 126 So. 409.

■ The real question before us then relates to the equity and sufficiency of the cross-bill as a pleading upon which to declare the status of the Foundation trust and instruct the Board of Governors in regard thereto. If the matter set up in the cross-bill, in the light of its allegations and those of the original bill, show that the trust instruments are reasonably susceptible of two constructions or difficult or embarrassing in their interpretation and were not brought in for interpretation by the original bill, the cross-bill is proper. We so regard it, as did the trial court, and that conclusion is here affirmed.

■ Error is also asserted in the overruling of those sections of the demurrer specifically challenging the cross-bill for certain allegational deficiencies such as the lack of particular description of the foundation properties. We cannot accord with the insistence. The specific matters as to which instructions are sought are not affected by the nature or character of the property held in trust, or where situate. The question posed is one of interpretation of a stated situation and the duty and authority of a trustee or trustees in that connection. The answer would be the same whatever may be the nature or description of the property. No inquiry is sought which, in the light of the amended cross-bill, would be influenced by the sort of property involved.

■ The argument is also made that the decree of the court overruled the demurrers generally, which of course means all features and grounds assigned. There was a feature directed to that phase of the cross-bill seeking the same relief as sought in the original bill. Of course, as indicated, the cross-bill to this extent was improper and that ground of demurrer should have been sustained (Wood v. Amos, 236 Ala. 477, 183 So. 639; Becker Roofing Company v. Meharg, 223 Ala. 163, 134 So. 864; 8 Ala. Dig., Equity, ☞ 196, p. 517) (if it was hot), and had the cross-bill contained no equity in the other aspect this error probably would have required a reversal.

■ The ruling, however, should not be reversed unless the error complained of has injuriously affected some substantial right, State v. Mobile & O. R. Co., 228 Ala. 533 (1), 154 So. 91; Supreme Court Rule 45, Code 1940, Tit. 7 Appendix. We are unable to perceive that any injury could possibly result to the complainants in respect to that ruling since it is indicated from the decree of the court that that aspect of the cross-bill challenged by those features of the demurrer was not regarded as germane, the relief prayed for being available under the original bill, and had been ruled out as improper by previous decree. In the progress of the cause, it will be so regarded.

One final proposition will be discussed.

■ The Attorney General of Alabama was permitted to intervene as a proper party complainant. The question of his right to intervene or to enforce his appearance in a case is not before us and is not considered. The cross-bill made him a party defendant thereto after his intervention and it is his contention that such a proceeding against him in his official capacity is in essence a suit against the state and not maintainable under Section 14 of the Constitu-

---

[1] Ante, p. 324.

tion and the rule of immunity of states against suits.

We think the position unsustainable. The sovereignty of the state is not involved and in no sense does the cross-bill as amended seek affirmative action against the state or in any way an involvement of its property rights.

 It is assumed the Attorney General was permitted to intervene on the theory that one alternative of Item Tenth of the Woodward will provided for a public charity. It has been declared that in such a case the Attorney General of the state may be made either a party plaintiff or defendant to a bill seeking an interpretation of the status of the trust estate and instructions to the trustees. 10 Am.Jur. 669; 14 C.J.S., Charities § 62(b), p. 529; Trenton Saving Fund Society v. Wythman, 104 N.J.Eq. 271, 145 A. 462; Trustees of Princeton University v. Wilson, 78 N.J.Eq. 1, 78 A. 393; Harvard College v. Society etc., 3 Gray, Mass., 280, 282; Jackson v. Phillips, 14 Allen, Mass., 539; Larkin v. Wikoff, 75 N.J. Eq. 462, 72 A. 98; Trenton Society v. Howell, N.J.Ch., 63 A. 1110; Moloney, Attorney General, v. New Berry Library, 150 Ill. 229, 37 N.E. 236.

This court has declared the rule to be that when a suit against a state official seeks a declaration of applicable principles of law to a certain status and direction of the parties in the premises, it does not infringe Section 14, Constitution, or violate sovereign immunity. Curry v. Woodstock Slag Corporation, 242 Ala. 379 (3 and 4), 6 So.2d 479; State v. Louis Pizitz Dry Goods Company, 243 Ala. 629(2), 11 So.2d 342.

In Glass v. Prudential Insurance Company, 246 Ala. 579, 584, 22 So.2d 13, this court voiced approval of the holding in the case of Internal Improvement Fund v. Bailey, 10 Fla. 112, 81 Am.Dec. 194, to the effect that where the title to state property has been vested by statute in state officials as trustees with express duties to perform, a suit with reference to such trust duties is not a suit against the state. So assuming, as the pleadings we are asked to review do, that a public charity is involved and the At-

torney General is a proper party, the Florida case bears a strong analogy to the status of that state official who, rather than being the alter ego of the state, is acting in the nature of a trustee charged with the duty of representing the public interest in the case of such charitable trust.

The Attorney General made himself a party to this cause and we think he may be required to respond to the cross-bill as amended.

The decree is affirmed.

Let the trustee pay the costs.

Affirmed.

All the Justices concur.