The plaintiffs below, the Town of Lowndesboro and Lee Frazer (hereinafter "the petitioners"), were awarded "interim" attorney fees and expenses in their declaratory-judgment action against the Alabama Department of Environmental Management ("ADEM"). The petitioners' declaratory-judgment action arose out of ADEM's approval of the construction of a landfill in Lowndes County. ADEM appealed the trial court's order, and the Court of Civil Appeals reversed the trial court's decision. Lowndesboro and Frazer then petitioned this Court for certiorari review. We granted the petition, and we now affirm the judgment of the Court of Civil Appeals.
 Facts and Procedural History
In 1998, Alabama Disposal Solutions-Landfill, L.L.C. ("ADSL"), a waste-disposal company, entered into an agreement with the Lowndes County Commission pursuant to which ADSL would operate a solid-waste landfill in Lowndes County. ADSL petitioned ADEM for a permit to operate the landfill. As part of the permitting process, ADSL was to submit a list of all persons who owned property adjacent to the landfill site. ADSL provided ADEM with such a list; however, Frazer, who owns property adjacent to the site, was not included on the list. ADEM ultimately issued a permit for the landfill. Frazer and the Town of Lowndesboro, however, appealed the issuance of the permit to the Environmental Management Commission ("EMC"), alleging that Frazer *Page 1205 
had not been given proper notice and that the presence of the landfill violated an ordinance of the Town of Lowndesboro.
In August 2000, while their appeal was pending before the EMC, the petitioners filed a declaratory-judgment action in the Montgomery Circuit Court alleging numerous statutory and regulatory violations by both ADEM and ADSL, including an allegation that ADEM had failed to adopt a State Solid Waste Management Plan ("State Plan") as a "final" regulation pursuant to Ala. Code 1975, § 22-27-45.
In November 2000, the circuit court entered an order staying the appeal that was then pending before the EMC. ADEM and ADSL appealed that order, and while the appeal of that order was pending, ADEM adopted a State Plan, and the circuit court lifted the stay. The Court of Civil Appeals thus dismissed the appeal as moot. See Alabama Disposal Solutions-Landfill L.L.C., v.Town of Lowndesboro, 837 So.2d 292 (Ala.Civ.App. 2002). The petitioners then filed a motion for a summary judgment in the declaratory-judgment action, arguing that the notice ADEM had provided to the public and to adjacent landowners was improper. In March 2002, the circuit court entered a summary judgment and declared the landfill permit void.
Shortly before the circuit court entered the summary judgment, the petitioners filed a motion requesting an award of attorney fees against ADEM. This request argued that, as a result of the petitioners' efforts, ADEM had adopted a State Plan that benefited the citizens of Lowndes County and of the State. The petitioners argued that under the common-benefit doctrine they were entitled to attorney fees, which they alleged totaled $1.6 million. In December 2002, the circuit court entered an order awarding the petitioners $338,618 in interim attorney fees and expenses. ADEM appealed; the Court of Civil Appeals reversed the circuit court's order, holding that an award of attorney fees and expenses against ADEM violated Ala. Const. 1901, § 14. See Alabama Dep't of Envtl Mgmt v. Town of Lowndesboro, [Ms. 2020385, April 8, 2005] 950 So.2d 1180 (Ala.Civ.App. 2005). The petitioners then filed with this Court a petition for certiorari review.
 Discussion
Article I, § 14, Alabama Constitution of 1901, provides generally that the State is immune from suit: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." Justice Maddox has previously described the long history of this provision:
 "During the early years of our history as a State our rule of state governmental responsibility was directly opposite from what it is today. Our first Constitution provided:
 "`The general assembly shall direct, by law, in what manner, and in what courts, suits may be brought against the State.'
 "Ala. Const. Art. 6, § 9 (1819).
 "The constitutional mandate of 1819 remained unchanged until the Constitution of 1865 was adopted when the provision granting a right to sue the state was changed to read:
 "`That suits may be brought against the State, in such manner, and in such courts, as may be by law provided.'
 "In 1875, the Legislature repealed all acts granting the right to sue the State, and the Constitution of 1875 contained a provision, that `The State of Alabama shall never be made defendant in any court of law or equity.' Section 15, Const, of Alabama, 1875. Section 14 of the 1901 Constitution is the same as Section 15 of the 1875 Constitution. *Page 1206 
The adoption of the 1875 Constitution closed the door to litigants who had claims against the State, and the door has remained closed continuously by subsequent constitutional provisions and court decisions interpreting those provisions.
 "Section 14 of the Alabama Constitution of 1901 specifically prohibits the State from being made a party defendant in any suit at law or in equity. This Court, construing Section 14, has held almost every conceivable type of suit to be within the constitutional prohibition."
Hutchinson v. Board of Trs. of Univ. of Alabama,288 Ala. 20, 23, 256 So.2d 281, 282-83 (1971) (footnote omitted).
Section 14 has been described as a "nearly impregnable" and "almost invincible" "wall" that provides the State an unwaivable, absolute immunity from suit any in any court.Alabama Agric. Meek Univ. v. Jones, 895 So.2d 867
(Ala. 2004); Patterson v. Gladwin Corp.,835 So.2d 137, 142 (Ala. 2002); and Alabama State Docks v. Saxon,631 So.2d 943, 946 (Ala. 1994). When an action is one against the State or a State agency, § 14 wholly removes subject-matter jurisdiction from the courts. Lyons v. RiverRoad Constr., Inc., 858 So.2d 257, 261 (Ala. 2003). An action is considered to be against the State "`when a favorable result for the plaintiff would directly affect acontract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate.'" Jones, 895 So.2d at 873 (quoting ShoalsCmty. College v. Colagross, 674 So.2d 1311, 1314
(Ala.Civ.App. 1995)) (emphasis added in Jones).
The appellate courts of this State have generally held that an action may be barred by § 14 if it seeks to recover damages or funds from the State treasury. Ex parte Alabama Dep't ofMental Health Mental Retardation, 937 So.2d 1018,1023 (Ala. 2006) ("Sovereign immunity bars claims against State agencies on the rationale that a damages award against a State agency would result in a monetary loss to the State treasury.");Lyons, 858 So.2d at 262 (noting that a party could not bring an action against a State official, because "[s]uch an action impermissibly seeks funds from the State treasury");Armory Comm'n of Alabama v. Staudt, 388 So.2d 991,993-94 (Ala. 1980) (stating that an action against the Armory Commission of Alabama was barred by § 14 because a judgment against it "would adversely affect the state treasury");Southall v. Stricos Corp., 275 Ala. 156, 158,153 So.2d 234, 235 (1963) (holding that § 14 prevents an action against the State when a result favorable to the plaintiff "would directly affect a contract or property right of the State"); and Moody v. University of Alabama,405 So.2d 714, 717 (Ala.Civ.App. 1981) (noting that an action was barred because a result in the plaintiff's favor "could ultimately `touch' the state treasury by requiring the disbursement of state funds"). Additionally, a party may not indirectly sue the State by suing its officers or agents "`when a result favorable to plaintiff would be directly to affect the financialstatus of the state treasury.'" Patterson v. Gladwin Corp.,835 So.2d at 142 (quoting State Docks Comm'n v. Barnes,225 Ala. 403, 405, 143 So. 581, 582 (1932)) (emphasis added inPatterson).
This case presents an issue of first impression: whether § 14 prohibits an award of attorney fees and expenses against a department or agency of the State of Alabama. The Court of Civil Appeals held that the attorney-fee award in this case did violate § 14:
"We return to the language of the Constitution. Section 14 simply states that `the State of Alabama shall never be *Page 1207 
made a defendant in any court of law or equity.' We likewise return to the basic principle that an action is one against the State when, among other things, the relief sought will impact the State treasury. . . . [W]e conclude that no decision of our Supreme Court stands as precedent for the proposition that the language of § 14 serves to protect the State treasury any differently from an award of attorney fees than from an award of money damages. Qualitatively, the effect on the treasury — and ergo the implication for the immunity of the State — would be the same in both cases.
"Corroborating the dispositive import of the basic principle against invasion of the state treasury that underlies our holding today is the recent decision of our Supreme Court inHaley v. Barbour County, [885 So.2d 783 (Ala. 2004) ].Haley involved an action by several counties and sheriffs against the commissioner of the Department of Corrections, in his official capacity, seeking an injunction requiring the commissioner to accept state inmates into Department of Corrections facilities after they had been sentenced, rather than leaving them in county jails. The trial court entered a preliminary injunction against the commissioner that required him `to accept a convicted state inmate within 30 days of receiving an inmate's transcript.' Haley,885 So.2d at 785. Thereafter, the counties and sheriffs filed a motion for an order to show cause why the commissioner should not be held in contempt of court, in part, for his alleged violation of the preliminary injunction. The trial court determined that the commissioner had violated its preliminary injunction. It held the commissioner in civil contempt and ordered him to pay monetary sanctions to the counties.
"On appeal, the commissioner argued that the monetary sanctions violated § 14. The Supreme Court held:
 "`Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261
(Ala. 2003); Mitchell v. Davis, 598 So.2d 801, 806 (Ala. 1992). "In determining whether an action against a state officer or employee is, in fact, one against the State, [a] [c]ourt will consider such factors as the nature of the action and the relief sought." Phillips v. Thomas, 555 So.2d 81, 83
(Ala. 1989). Such factors include whether "a result favorable to the plaintiff would directly affect a contract or property right of the State," Mitchell, 598 So.2d at 806, whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784
(Ala. 1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons, 858 So.2d at 261. Moreover, we note that claims against state officers in their official capacity are "functionally equivalent" to claims against the entity they represent. Hinson v. Holt, 776 So.2d 804, 810 (Ala.Civ.App. 1998). . . . In this case, the commissioner represents [the Department of Corrections], which, as a department of the State, is entitled to sovereign immunity. Rodgers v. Hopper, 768 So.2d 963, 968 (Ala. 2000) (holding that DOC is entitled to sovereign immunity under § 14, because a judgment against it would be paid from the treasury of the State).
 "`The issue presented in this case is whether, in light of § 14, the commissioner, in his official capacity, may be *Page 1208 
assessed civil sanctions for his failure to comply with the trial court's injunctive orders. The parties are unable to provide this Court with any precedent directly addressing this issue; indeed, this Court has found no caselaw addressing whether § 14 prevents the trial court from assessing contempt sanctions against the State.
 "`It is clear that. the particular sanctions in this case "directly affect the financial status of the state treasury." Lyons, 858 So.2d at 261. While the counties claim that the sanctions punish the commissioner for his contempt and seek to compel compliance with the court's orders, the effect of the trial court's order is to impact the treasury and divest it of funds. Section lb, however, forbids such an assault on the state treasury. See Lyons, 858 So.2d at 261; see also Patterson, 835 So.2d at 142 (holding that § 14 prevents the State from being sued, and a suit against the state "`cannot be indirectly
accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.'" (quoting State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932))); and Southall v. Stricos Corp., 275 Ala. 156, 158, 153 So.2d 234, 236 (1963) (holding that an action against an officer was not an action against the State, because the relief sought would not "take away any property of the State, or fasten a lien on it, or interfere with the disposition of funds in the treasury"). Thus, we hold that the trial court's order assessing against the commissioner in his official capacity monetary sanctions for contempt violates § 14.'
 "Haley, 885 So.2d at 788-89 (some emphasis original, some emphasis added; footnotes omitted). See also Alabama Agrie. Mech. Univ. v. Jones, 895 So.2d [867] at 872-73 [(Ala. 2004)] (denying a tenured professor's claim for retrospective monetary relief against the State in conjunction with injunctive relief because the retrospective monetary relief was prohibited by § 14); State v. Pullman-Standard Car, 235 Ala. 493, 179 So. 541
(1938) (holding that § 14 prohibits the awarding of costs against the State as a defendant); cf. State v. Inman, 239 Ala. 348, 359, 195 So. 448, 458 (1940) (opinion on rehearing) (distinguishing between an award of costs against the State, as a defendant, which is `against the provisions of [§ 14] of the Constitution,' and an award of costs against the State when it `is a party plaintiff).
 "In addition to the straightforward nature of the principle applied in Haley, that case's significance for our purposes today is further enhanced by two facts. First, the power to punish a party for contempt at issue in Haley is an inherent power of the court. See, e.g., Ex parte Wetzel, 243 Ala. 130, 132, 8 So.2d 824, 825
(1942). Likewise, our courts have held that the equitable exception to the American rule regarding attorney fees upon which Lowndesboro and Frazer base their claim is attributable to the inherent power of the court. See, e.g., Alabama Alcoholic Beverage Control Bd. v. Pelham, 855 So.2d [1070, 1083
(Ala. 2003) ] (quoting Ex parte Horn, 718 So.2d [694, 702 (Ala. 1998) ]). The Supreme Court's decision in Haley stands for the proposition that the inherent nature of the trial court's power does not extend to an invasion of the state treasury in the face of a § 14 challenge.
 "Moreover, Lowndesboro and Frazer's central argument regarding attorney fees is that an attorney-fee award *Page 1209 
that would otherwise be permissible under our law (i.e., because it falls within one of the recognized exceptions to the American rule), is not barred by § 14 of the Constitution if the underlying claim in connection with which the claim for a fee is made is not barred by § 14. In Haley, however, the underlying claim was not barred by state immunity. That fact did not prevent the Supreme Court from unequivocally `drawing the line' at the plaintiffs' attempt to extend the State's vulnerability to suit to a form of relief that would invade the state treasury."
ADEM v. Lowndesboro, 950 So.2d at 1201.
On appeal, Lowndesboro and Frazer argue that because the underlying action falls within an exception to the bar found in § 14 the award of interim attorney fees and expenses likewise is not barred. This Court has previously noted certain exceptions to § 14:
 "[Section] 14 sovereign immunity does not protect State officers and employees under circumstances where a plaintiff alleges that they acted `willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law,' Phillips [v. Thomas, 555 So.2d 81, 83 (Ala. 1989)], nor does it protect them from `a suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel performance of a ministerial act, or a suit brought under the Declaratory Judgments Act.' Mitchell [v. Davis, 598 So.2d 801, 806 (Ala. 1992) ]."
Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1268
(Ala. 2000).[1]
The petitioners contend that the underlying action, which seeks a declaratory judgment, falls within an exception to § 14. Furthermore, the petitioners cite numerous cases that fell within exceptions to § 14 in which courts have awarded attorney fees against the State. See, e.g., Brown v.State, 565 So.2d 585 (Ala. 1990); Slawson v. AlabamaForestry Comm'n, 631 So.2d 953 (Ala. 1994); State Dep'tof Human Res. v. Kelly, 623 So.2d 738 (Ala.Civ.App. 1993);Wyatt v. Stickney, 344 F.Supp. 387 (M.D.Ala.1972), reversed in part, Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir.1974); and NAACP v. Allen, 340 F.Supp. 703
(M.D.Ala.1972). Because the underlying action falls within an exception to § 14, the petitioners argue, an award of attorney fees and expenses is also not barred. We disagree.
None of these cases cited by the petitioners actually addresses whether § 14 bars an award of attorney fees against the State. As the Court of Civil Appeals noted:
 "`For a case to be stare decisis on a particular point of law, that issue must have been raised in the action, decided by the court, and its decision made part of the opinion of the case; accordingly, a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced.'
 "20 Am.Jur.2d Courts § 153 (1995) (footnotes omitted). As our Supreme Court recently observed, `[a]rguments based on what courts do not say, logically speaking, are generally unreliable and should not be favored by the judiciary; this is especially true when the judiciary *Page 1210 is faced with, as we are here, a contrary constitutional mandate.' Ex parte James, 836 So.2d 813, 818 (Ala. 2002) (emphasis added). See also Pennhurst State School Hosp. v. Haiderman, 465 U.S. 89, 119 (1984) (`"When questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."' (quoting Hagans v. Lavine, 415 U.S. 528, 533 n. 5 (1974))); and American Portland Cement Alliance v. Environmental Protection Agency, 101 F.3d 772, 776 (D.C. Cir.1996) ('That the court has taken jurisdiction in the past does not affect the analysis because jurisdictional issues that were assumed but never expressly decided in prior opinions do not thereby become precedents.')."
ADEM v. Lowndesboro, 950 So.2d at 1194-95.
None of the cases cited by the petitioners holds that § 14 allows an award of attorney fees and expenses against the State; indeed, this issue, even if raised in those cases, was not decided by the courts and made part of the opinion of the case.[2] Thus, those decisions cannot be binding precedent on the issue.
The petitioners further argue that this Court held inAlabama Alcoholic Beverage Control Board v. City ofPelham, 855 So.2d 1070, 1084 (Ala. 2003), that State funds could be used to award attorney fees. We stated in that case: "This Court has held that State funds may be used to award attorney fees to plaintiffs who bestow a common benefit to the named plaintiffs as well as the public. Brown [v.State, 565 So.2d 585, 591-92 (Ala. 1990) ]."[3] However, this Court also expressed concern regarding whether an award of attorney fees against the State outside of a federal law permitting such an award was permissible: "Laving to one side concerns over the applicability of Brown to this proceeding where no federally created right to an attorney fee is presented, we must determine whether the City bestowed a common benefit." 855 So.2d at 1084 (footnote omitted). However, we were not required to address that issue in ABC Board v.Pelham, because we held that the plaintiffs were not otherwise entitled to attorney fees. While we acknowledged inABC Board v. Pelham that, in the past, attorney fees have been awarded against the State, we went on to note concern as to whether such an award was permissible, and we resolved the case on other grounds. That decision thus does not support the proposition that this Court has approved of an attorney-fee award in the face of § 14; indeed, our decision in that case did not address § 14 at all.
The petitioners also cite State Board of Education v.Waldrop, 840 So.2d 893 (Ala. 2002), for the proposition that attorney fees may be awarded against the State in spite of § 14. Again, in that decision this Court held that an award of attorney fees was inappropriate. Therefore, we were not required to address the issue whether *Page 1211 
§ 14 barred such an award, and our opinion is not precedent on that issue.[4]
Additionally, the fact that an action seeks a declaratory judgment and thus purportedly falls within an exception to § 14 does not necessarily open the doors of the State treasury to legal attack. The exception afforded declaratory-judgment actions under § 14 generally applies only when the action seeks "construction of a statute and how it should be applied in a given situation," Aland v. Graham, 287 Ala. 226, 230,250 So.2d 677, 679 (1971), and not when an action seeks other relief. Curry v. Woodstock Slag Corp., 242 Ala. 379,6 So.2d 479 (1942) (holding that a declaratory-judgment action that seeks only a declaration to construe the law and direct the parties, and no other relief, does not violate § 14).[5]
Section 14 bars an action characterized as a declaratory-judgment action "when it is nothing more than an action for damages." Lyons, 858 So.2d at 263. As the Court of Civil Appeals noted in Moody v. University ofAlabama, 405 So.2d at 717: "[W]hile an action for declaratory judgment against the state or its agencies which seeks the interpretation of a statute is generally not prohibited, . . . such an action is prohibited when, as here, a result favorable to the plaintiff would directly affect a contract or property right of the state." See also Stark v.Troy State Univ., 514 So.2d 46, 50 (Ala. 1987) (holding that a declaratory-judgment action seeking to compel officials to perform their legal duties was not barred by § 14; however, a portion of the action seeking compensatory damages could not be maintained); and Unzicker v. State, 346 So.2d 931,933 (Ala. 1977) (holding that a declaratory-judgment action against the State that would affect property in which the State had an interest was barred by § 14).
Although the petitioners' underlying declaratory-judgment action may not have been barred by § 14,[6] it is clear that an award of interim attorney fees and expenses impacts the State treasury and divests it of funds in the very way forbidden *Page 1212 
by § 14. Haley v. Barbour County, 885 So.2d 783,789 (Ala. 2004). Therefore, the Court of Civil Appeals correctly held that the award of interim attorney fees was barred.
The petitioners argue that the Court of Civil Appeals' reliance on Haley was misplaced. Although Haley holds that § 14 forbids the State from being assessed a sanction for contempt, Haley cannot be construed, the petitioners contend, to hold that § 14 bars an award of attorney fees. Specifically, the petitioners note that inHaley the trial court awarded attorney fees against the State, and the State paid those fees. Because this Court, on the appeal from the award of sanctions, did not vacate the attorney-fee award, the petitioners maintain that Haley
cannot stand for the proposition that § 14 bars an award for attorney fees. We disagree.
In Haley, funds were appropriated by the legislature to bring the Department of Corrections into compliance with certain orders of the trial court in that case. See Haley,885 So.2d at 787. Those funds were used in part to pay the plaintiffs' attorney fees. However, the issue whether § 14 barred the trial court from awarding such fees was not raised, decided, or part of our decision in Haley. Haley thus cannot stand for the proposition that an attorney-fee award against the State is permissible under § 14. Instead, the Court of Civil Appeals held that the general principles of law regarding § 14 found in Haley — which led to the conclusion in that case that contempt sanctions against the State were barred by § 14 — were applicable in the instant case. We see no error in the Court of Civil Appeals' analysis.
The petitioners further argue that their action "would have been cognizable" under 42 U.S.C. § 1983,[7] and that thus an award of attorney fees in this case is appropriate under42 U.S.C. § 1988.[8] In support of their argument, the petitioners cite James v. Alabama Coalition for Equity,Inc., 713 So.2d 937 (Ala. 1997), which states that an award of attorney fees under 42 U.S.C. § 1983 and42 U.S.C. § 1988 is not barred by § 14: "[T]he doctrine of State sovereign immunity does not bar an award of attorney fees pursuant to §§ 1983 and 1988. Hutto v. Finney,437 U.S. 678, 693-94, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522
(1978). For these reasons, the trial court did not err in awarding fees pursuant to § 1988." 713 So.2d at 950.
In James, three plaintiffs were awarded attorney fees in an action against the State. Two plaintiffs were awarded fees under 42 U.S.C. § 1988, and the third, Alabama Coalition for Equity, Inc. ("ACE"), was awarded fees under the "common-fund" theory. 713 So.2d at 947. This Court held that ACE should have been awarded fees under 42 U.S.C. § 1988. Although the trial court did not explicitly award fees under 42 U.S.C. § 1988, we *Page 1213 
noted that the award could be upheld under the well-settled theory that a correct judgment will not be reversed, even if the trial court gave a wrong reason for its judgment.713 So.2d at 951. The petitioners urge that this Court construe the award of interim attorney fees and expenses in this case as a permissible award under § 1988, which, they argue, would not be barred by § 14.
The holding of James, however, is inapplicable here. In that case, we held that the plaintiffs' pleadings invoked42 U.S.C. § 1983 and 42 U.S.C. § 1988. 713 So.2d at 948. ADEM asserts that in the instant case the petitioners did not allege a cause of action under 42 U.S.C. § 1983 or any other federal law that would allow an award of attorney fees under42 U.S.C. § 1988. The petitioners do not dispute this assertion, and nothing in the record demonstrates that the instant action was based on 42 U.S.C. § 1983 or42 U.S.C. § 1988. Therefore, we see no facts or authority that would require the judgment of the Court of Civil Appeals to be reversed on this ground.
The petitioners further argue that if this Court holds that § 14 bars an award of attorney fees and expenses, it should apply this rule prospectively and allow the award in this case to stand. The petitioners contend that applying our ruling retroactively — thus vacating the award in this case — would amount to "changing the rules after the game has been played." The petitioners, however, cite no authority in their initial brief in support of this argument.
 "The United States Supreme Court has suggested consideration of the following factors in choosing whether to apply a judicial decision prospectively:
 "`First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968) ] . . . or by deciding an issue of first impression, whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969) ]. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737-38, 14 L.Ed.2d 601 (1965) ]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity."'"
McCullar v. Universal Underwriters Life Ins. Co.,687 So.2d 156, 165 (Ala. 1996) (plurality opinion) (quotingChevron Oil Co. v. Huson, 404 U.S. 97, 106-07,92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).
As we noted above, there is no "clear past precedent" indicating that an award of attorney fees and expenses against the State is not barred by § 14; thus, we are not required to overrule any prior caselaw. Indeed, as noted above, this case presents an issue of first impression. Moreover, several Justices have previously questioned whether § 14 immunity would bar an attorney-fee award, especially in the absence of a federal law that would arguably override such immunity.State v. *Page 1214 Brown, 577 So.2d 1256, 1261 (Ala. 1991) (Maddox, J., dissenting) (questioning whether an award of attorney fees against the State was consistent with § 14 and noting that the majority had failed to address that issue); State Bd. ofEduc. v. Waldrop, 840 So.2d at 902-03 (Lyons, J., concurring specially) (expressing concern as to whetherBrown v. State, 565 So.2d 585 (Ala. 1990), which awarded attorney fees against the State, was consistent with § 14); ABC Bd. v. Pelham, 855 So.2d at 1084 n. 7 (noting concerns regarding whether § 14 would bar an award of attorney fees "where no federally created right to an attorney fee is presented").
Moreover, this Court has declined to give constitutional rulings prospective-only application. In Alabama State DocksTerminal Ry. v. Lyles, 797 So.2d 432, 439 (Ala. 2001), we noted:
 "In general, with regard to civil matters, prospective-only decision-making within the realm of constitutional law is disfavored. `Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense.' American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 201, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Scalia, J., concurring).
 "Even when this Court is not applying a rule of constitutional or statutory law, but is only addressing the effects of decisional law, our strong inclination is to avoid establishing rules that are to be applied prospectively only:
 "`Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156
(Ala. 1996) (plurality opinion). "Retroactivity `is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law It also reflects the declaratory theory of law. . . . according to which the courts are understood only to find the law, not to make it.'" 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-56, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991).'
 "Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala. 1997)."
797 So.2d at 439. ADEM, on the other hand, argues that prospective-only application of this case would amount to a waiver of the State's § 14 immunity, which this Court is without jurisdiction to do.
Because prospective-only application of judgments is disfavored, especially within the realm of constitutional law, our judgment must apply retroactively. Therefore, the award of interim attorney fees and expenses in this case must be vacated.
 Conclusion
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
[1] "Other non-prohibited actions are inverse condemnation actions brought against State officials in their representative capacity and actions brought against State officials in their representative capacity and individually where it is alleged that they have acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." Taylorv. Troy State Univ., 437 So.2d 472, 474 (Ala. 1983).
[2] The Court of Civil Appeals' opinion thoroughly explains why the authority cited by the petitioners does not hold that attorney fees against the State are permissible under § 14, and we see no need to repeat that analysis here. See ADEM v.Lowndesboro, 950 So.2d at 1191. Additionally, neitherWyatt v. Stickney nor NAACP v. Allen, which were not discussed in the Court of Civil Appeals' decision, hold that § 14 does not bar an award of attorney fees.
[3] Brown v. State was followed by State v.Brown, 577 So.2d 1256 (Ala. 1991), in which Justice Maddox, in a dissent, questioned whether an award of attorney fees against the State was consistent with § 14.577 So.2d at 1261.
[4] Moreover, Justice Lyons noted in his special concurrence in Waldrop that the plaintiff asserted his claims under the Civil Rights Act, 42 U.S.C. § 1981 et seq., and that42 U.S.C. § 1988 could allow the recovery of attorney fees, regardless of any State constitutional provision affording immunity. Thus, Justice Lyons noted, "The question whether the liability of the State for payment of an attorney fee as recognized in Brown v. State[, 565 So.2d 585
(Ala. 1990),] is properly confined to cases arising under statutes such as 42 U.S.C. § 1988 must await another day."840 So.2d at 903.
[5] In State v. Louis Pizitz Dry Goods Co.,243 Ala. 629, 633, 11 So.2d 342, 345 (1943), superseded, in part, on other grounds, Ala. Code 1940, tit. 7, § 167 (now Ala. Code 1975, § 6-6-221), we further explained why a declaratory-judgment action is not barred by § 14:
 "But we have held that when an officer of the State is confronted with an uncertain problem of what the law means which requires certain acts on his part, or whether the law is valid, and he proposes to pursue a certain course of conduct in that connection, which would injuriously affect the interests of others who contend that he has no legal right thus to act, there is thereby created a controversy between them and the Declaratory Judgments Act furnishes a remedy for either party against the other to declare the correct status of the law. The purpose is to settle a controversy between individuals, though some of them may be State officers."
See also Thurlow v. Berry, 247 Ala. 631, 639,25 So.2d 726, 733 (1946) ("This court has declared the rule to be that when a suit against a state official seeks a declaration of applicable principles of law to a certain status and direction of the parties in the premises, it does not infringe Section 14, Constitution, or violate sovereign immunity.").
[6] We express no opinion as to whether the underlying action is permissible under § 14, because the record before us is insufficient to allow such a determination.
[7] 42 U.S.C. § 1983 provides, in pertinent part:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . "
[8] 42 U.S.C. § 1988(b), provides, in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ." (Emphasis added.) *Page 1215