I fully agree with the rationale of the main opinion and the resulting dismissal of the appeals before us as they relate to John Raley's attempt to sue the State of Alabama and the State of Alabama General Liability Trust Fund. With respect to the individual State defendants (James Allen Main and Troy King), I concur in the result reached by the main opinion. I write separately to explain two respects in which my analysis differs from that of the main opinion.
First, I believe that each of the six exceptions to sovereign immunity discussed in the main opinion is properly understood to apply only to State officials. It is true that the opinion in the 1971 case of Aland v. Graham,287 Ala. 226, 229-30, 250 So.2d 677, 679 (1971) (quoted in Pattersonv. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002), and in turn in the main opinion), was worded in such a way as to leave open the possibility that the exception for declaratory-judgment actions is not limited to actions against State officials. It is my conclusion, however, that cases such as Aland have not been careful in their articulation of this exception to sovereign immunity, particularly in light of the absolute immunity that it is now well established extends both to the State and to State agencies.[1] A more careful articulation of the declaratory-judgment exception was provided by this Court inEx parte Alabama Department of Transportation,978 So.2d 17, 24 (Ala. 2007). In Ex parte Alabama Department ofTransportation, we reaffirmed the existence of six exceptions to the rule of sovereign immunity (rather than the four exceptions stated in Aland) and quoted from precedents worded in such a way as to indicate that all six exceptions are limited to State officials:
 "There are exceptions to the State's sovereign immunity.
 "`A state official is not immune from an action that (1) seeks to compel a state official to perform his or her legal duties, (2) seeks to enjoin a state official from enforcing unconstitutional laws, (3) seeks to compel a state official to perform ministerial acts, or (4) seeks a declaration under the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975, construing a statute and applying it in a given situation.'
"Latham v. Department of Corr., 927 So.2d 815, 821
(Ala. 2005). Other actions that are not prohibited by § 14 include:
 "`(5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond *Page 584 
their authority or in a mistaken interpretation of law.'
 "Drummond Co. [v. Alabama Dep't of Transp.], 937 So.2d [56,] 58 [(Ala. 2006)] (emphasis omitted)."
(Footnote omitted.) See generally State v. Louis Pizitz DryGoods Co., 243 Ala. 629, 633, 11 So.2d 342, 345 (1943) ("[W]e have held that when an officer of the State is confronted with an uncertain problem of what the law means which requires certain acts on his part, or whether the law is valid, and he proposes to pursue a certain course of conduct in that connection, which would injuriously affect the interests of others who contend that he has no legal right thus to act, there is thereby created a controversy between them and the Declaratory Judgments Act furnishes a remedy for either party against the other to declare the correct status of the law.The purpose is to settle a controversy between individuals,though some of them may be State officers." (emphasis added)) (quoted with approval in Ex parte Town ofLowndesboro, 950 So.2d 1203, 1211 n. 5 (Ala. 2006));Thurlow v. Berry, 247 Ala. 631, 639, 25 So.2d 726, 733
(1946) ("This court has declared the rule to be that when a suit against a state official seeks a declaration of applicable principles of law to a certain status and direction of the parties in the premises, it does not infringe Section 14, Constitution, or violate sovereign immunity." (emphasis added)).
Second, on the strength of the analysis provided by this Court in Strength v. Alabama Department of Finance,622 So.2d 1283 (Ala. 1993), I conclude that the statutory mandate by our legislature for the defense and indemnification of State employees is, by its very nature, inherently one of insurance; the statements otherwise in the "guidelines" adopted by the executive branch do not make it any less so. It is a statutorily mandated arrangement by which a "third party" (the State of Alabama) provides indemnification to a "first party" (a State employee) for liability to a "second party" (a plaintiff allegedly harmed by the actions of the State employee). Nor am I dissuaded from this conclusion by the fact that no explicit or segregated premium is paid for this insurance by the State employee. The consideration for this insurance is found in the general contract of employment between the State and the employee, just as it is when a private employer, out of its own funds, insures its officers or employees for their individual liability to others.
The fact that the arrangement dictated by the legislature is one of insurance, however, does not mean that the result achieved by the main opinion is wrong. As this Court stated inStrength: "[L]ittle imagination is required to conceive of a number of principles contained in that body of [insurance] law that could not apply to the State because of its sovereign immunity." 622 So.2d at 1292. Accordingly, and as this Court frequently has noted, the concepts of estoppel and waiver, upon which Raley and Sharpley rely, do not operate against the State. See, e.g., Marsh v. Birmingham Bd. ofEduc., 349 So.2d 34, 36 (Ala. 1977). The fact that State officials, therefore, did not provide to Raley a copy of the Fund guidelines any sooner than they did or did not expressly identify the criminal-conviction exception upon which they ultimately denied indemnification does not prevent the State from ultimately relying on that exception.[2]
Raley argues that "as a matter of policy, the Fund should be compelled to defend and indemnify [him] for any damages that *Page 585 
might be forthcoming in the civil liability action." Although I might agree with this statement, neither I nor the other members of this Court are allowed to act on what we think "policy" should be. The decision as to policy is for the other two branches of government, one of which — the executive branch — has decided that the Fund need not indemnify the employee if the employee is convicted of a crime.[3] Because of this apparently absolute exclusion and because the concepts of estoppel and waiver relied upon by Raley and Sharpley do not apply against State officials, I concur in the result reached by the main opinion insofar as the appeals before us concern the individual State defendants.[4]
[1] Because both the State and State agencies are entitled to the same absolute immunity under § 14, if the exception for declaratory judgment actions is to extend beyond State officials, that extension logically would reach both State agencies and the State itself.
[2] As the main opinion also notes, the Fund's March 2002 communication with Raley also contained a general reservation of "all of its Guideline defenses."
[3] No argument is made in this case that the executive-branch decision to adopt an exception for all crimes violates § 36-1-6.1, Ala. Code 1975, by which the legislature created the Fund.
[4] Consistent with the main opinion, my conclusion is the same as to both the State's obligation to indemnify Raley for any liability to Sharpley and the State's obligation to provide a defense to Raley, under the Fund guidelines. I do, however, reject any suggestion that the attorney general, by virtue of his authority under the guidelines "to defend or to refuse to defend any Covered Employee in any action hereunder," has anything other than the right to determine, in his own discretion, whether it will be his office, rather than private counsel, that will "defend [a] Covered Employee hereunder." The issue presumes that the employee is a "Covered Employee in [an] action hereunder" and under the statutory mandate of § 36-1-6.1 for "basic coverage." Such an employee is statutorily entitled to a legal defense.