STUART, Justice.
The Jefferson County Department of Human Resources (“DHR”) and Tammie Godfrey, a social worker employed by DHR, contend that they are immune from a civil action, and they petition this Court for a writ of mandamus directing the Walker Circuit Court to dismiss them from the action filed by Thomas Sanders and Vera Sanders. We grant the petition and issue the writ.

Facts

In June 2001, the Sanderses’ house was completely destroyed by a fire started intentionally by M.H., a foster child for whom they were caring. In October 2001, the Sanderses filed a complaint in the Walker Circuit Court, naming as defendants Seraaj Family Homes, Inc., DHR, Godfrey, and Lashonda Crosby, an employee of Seraaj Family Homes. The complaint alleged that DHR and Godfrey had failed to follow established procedures for out-of-county placement[1] and had negligently placed M.H., who had a history of dangerous behavior, who suffered from a mental illness, and who was in need of psychiatric care, in the Sanderses’ home. In November 2001, DHR and Godfrey moved to dismiss the action against them or, in the alternative, for a summary judgment on the ground of absolute and/or State-agent immunity. The motion was supported by Godfrey’s affidavit. In her affidavit, Godfrey stated:
“My name is Tammie R. Godfrey. I am a resident of Walker County, Alabama, and am over the age of 19 years. I am competent to provide the sworn statements contained in this affidavit. I have been employed by the Jefferson County Department of Human Resources (DHR) since November 2000 as a social worker. I work primarily with children who are placed in foster care.
“I have read the complaint filed by Thomas and Vera' Sanders. I am the case worker for M.H., a foster child in the temporary custody of the Jefferson County DHR. At the time that I became M.H.’s caseworker, he was living in the Bessemer Boys Group Home. A meeting was held to decide what would be the most appropriate placement for M.H. The Bessemer Boys Home director, M.H.’s therapist, M.H., and myself were present at this meeting. It was decided unanimously by everyone at this meeting that M.H. should be placed in a therapeutic foster home. His therapist specifically said that M.H. was ready for placement in a therapeutic foster home. I contacted Seraaj Family Homes (Seraaj) which is a private business that provides therapeutic foster homes for Jefferson County DHR and requested that they locate a therapeutic foster home for M.H. A therapeutic foster home is a home for foster children that have significant behavioral and/or emotional problems that may be too dif *624 ficult for regular foster parents to handle. The therapeutic foster parents are provided special training by Seraaj and are licensed by Seraaj. They are also assigned a Seraaj social worker to assist the foster family with problems that arise with the foster care placement. DHR pays a monthly rate to Seraaj for the placement of each foster child and Seraaj then pays the foster parents for keeping the child. Therapeutic foster parents receive significantly more money to keep a therapeutic foster child than what is paid to regular foster parents.
“I provided Seraaj with information that they require in locating a placement for a foster child. This included, but was not limited to, a social summary with information about M.H., his school records, Medicaid screening records, and a psychological assessment. A Se-raaj representative contacted me and said that they had a foster home that would be appropriate for M.H. This was the home of Vera and Thomas Sanders. I had no part in the selection of their home as a placement for M.H. I took M.H. to visit Mr. and Mrs. Sanders on January 5, 2001. This was the first time that I met them. He stayed in their home on a trial basis from January 5-8, 2001. On January 8, 2001, they decided that M.H. could stay in their home indefinitely.
“On June 12, 2001, I was notified that the Sanders’s home had caught fire and was destroyed. It was alleged that M.H. started the fire. M.H. later pled guilty to first-degree arson for starting this fire.
“Prior to the incident in the Sanders’s home, M.H. had no history, to my knowledge, of starting fires. He also had no history, to my knowledge, of acting in a dangerous way towards foster parents. ( There was one incident in which it was alleged that he threw a phone at a foster parent, though he denied it. The Sanders were aware of this prior allegation.) M.H. did have behavioral problems which is why he was being placed in a therapeutic foster home. Information concerning his past history was given to Seraaj before the placement. Prior to the placement, M.H., had not, to my knowledge, been diagnosed with a mental illness. There was nothing that I knew about M.H. that would have led me to believe that he would start a fire in a foster home or otherwise be dangerous to the foster parents.
“I have not acted in any negligent manner in the placement of M.H. in the home of the Sanders. I provided all pertinent information concerning M.H. to Seraaj and they selected the Sanders’s home for him. I have acted at all times within the line and scope of my employment and within the authority given to me as a DHR social worker. In all of my contacts and dealings -with M.H. and the Sanders, I was acting in my official capacity as an employee of the Jefferson County Department of Human Resources. I have not had any contacts with them or taken any actions involving them outside of my employment with the Jefferson County Department of Human Resources. I followed the policies and rules concerning foster care placements issued by DHR in placing M.H. in the home of the Sanders. I have not violated any laws, policies, procedures, rules or regulations of the State of Alabama and/or the State of Alabama Department of Human Resources. I did not make any decisions or take any actions in this case in violation of any laws, policies, procedures, or regulations.”
On December 4, 2001, the Sanderses filed an objection to DHR and Godfrey’s *625 motion. However, rather than disputing the facts in Godfrey’s affidavit or responding to the claims of immunity, the Sanders-es stated they needed to engage in discovery and asked the trial court to extend the time for ruling on the motion.
On March 7, 2002, at a hearing on DHR and Godfrey’s motion, the trial court held that the claims against DHR and Godfrey should have been filed with the State Board of Adjustment pursuant to § 41-9-62(b), Ala.Code 1975, and stayed the action for six months to allow the Sanderses to file a such a claim.[2]
On June 24, 2010, the trial court set the case for the call docket on August 5, 2010. Before the docket call, counsel for DHR and Godfrey and counsel for the Sanderses agreed that DHR and Godfrey were due to be dismissed on the basis of immunity. They drafted and signed a joint stipulation of dismissal, and on August 5, 2010, they filed the document with the trial court. During the docket call that day, counsel for DHR and Godfrey asked the trial court to rule on all pending motions or to dismiss the action against DHR and Godfrey based on the joint stipulation. Counsel for Seraaj Family Homes objected to the dismissal of DHR and Godfrey, and the trial court refused to dismiss the action against DHR and Godfrey. DHR and Godfrey petition this Court to direct the Walker Circuit Court to dismiss the claims against them because, they say, they are immune from suit.

Standard of Review

“ ‘A writ of mandamus is a “ ‘ “drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’
“Ex parte Wood, 852 So.2d 705, 708 (Ala.2002). A petition for a writ of mandamus is the proper vehicle by which to seek review of the denial of a motion to dismiss based on the ground of State immunity:
“ ‘The denial of a motion to dismiss or a motion for a summary judgment generally is not reviewable by a petition for writ of mandamus, subject to certain narrow exceptions, such as the issue of immunity. Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala.2002).’
“Ex parte Haralson, 858 So.2d 928, 931 n. 2 (Ala.2003).”
Drummond Co. v. Ala. Dep’t of Transp., 937 So.2d 56, 57 (Ala.2006).

Discussion

DHR and Godfrey contend that they are entitled to immunity from the claims alleged against them in the Sand-erses’ complaint; therefore, they say, the trial court erred in denying their motion to dismiss or, in the alternative, for a summary judgment.
“ ‘[W]here matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), [Ala. R. Civ. P.], regardless of its denomination and treatment by the trial court.’ Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986).
“ ‘When the trial court is called upon to consider a Rule 12(b)(6) motion, it must examine the allegations in the complaint ... and construe it so as to “resolve all doubts concerning *626 [its] sufficiency in favor of the [claimant].”- In so doing, the court does not consider whether the claimant will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985), citing First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981), and Karagan v. City of Mobile, 420 So.2d 57 (Ala.1982).
“ ‘If the motion, however, is converted to a Rule 56[(c), Ala. R. Civ. P.,] motion for summary judgment, the “moving party’s burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.” Papastefan v. B & L Const. Co., 356 So.2d 158 (Ala.1978), citing C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1366 (1969).’
“Hightower & Co. v. United States Fidelity & Guar. Co., 527 So.2d 698, 702-03 (Ala.1988).”
A.W. v. Wood, 57 So.3d 751, 756 (Ala.2010).
Because the trial court had before it, in addition to the pleadings, God-frey’s affidavit, DHR and Godfrey’s motion is treated as a summary-judgment motion, and we must determine whether DHR and Godfrey are entitled to a summary judgment.
“This Court’s review of a summary judgment is de novo.
‘“In reviewing the disposition of a motion for summary judgment, “we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was “entitled to a judgment as a matter of law.” Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993) [overruled on other grounds, Bruce v. Cole, 854 So.2d 47 (Ala.2003) ]; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’ ”
Pittman v. United Toll Sys., LLC, 882 So.2d 842, 844 (Ala.2003)(quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997)).
“Article I, § 14, Const, of Ala. 1901, provides ‘[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.’ Section 14 affords absolute immunity to both the State and State agencies. Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831, 839 (Ala.2008) (noting that it “ ‘is now well established’ ” that ‘ “absolute immunity ... extends to the State and to State agencies” ’ (quoting Raley v. Main, 987 So.2d 569, 583 (Ala.2007) (Murdock, J., concurring in part and concurring in the result))); Ex parte *627 Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala.2006) (citing Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003))(When an action is one against the State or a State agency, § 14 wholly removes subject-matter jurisdiction from the courts.’)-”
Ex parte Alabama Dep’t of Human Res., 999 So.2d 891, 895 (Ala.2008). Moreover, “[a] complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901.” Ex parte Butts, 775 So.2d 173, 177 (Ala.2000). In their response to DHR and Godfrey’s petition, the Sanders-es concede that DHR and Godfrey, in her official capacity, are immune from the claims the Sanderses have asserted against them. Therefore, DHR and Godfrey, in her official capacity, have established a clear legal right to a summary judgment.
Furthermore, to the extent that the Sanderses alleged claims against God-frey in her individual capacity, Godfrey is entitled to a summary judgment based on State-agent immunity. Godfrey submitted evidence indicating that her actions fell within the categories of State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000), and the Sanderses failed to present substantial evidence establishing that in placing M.H. Godfrey had acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority. See Ex parte Cranman. Therefore, in her individual capacity, Godfrey is entitled to a summary judgment based on State-agent immunity.

Conclusion

DHR and Godfrey have established, and the Sanderses agree, that DHR and God-frey, in her official capacity, are entitled to immunity from the Sanderses’ civil action. In addition, Godfrey is entitled to State-agent immunity from the claims asserted against her in her individual capacity under Ex parte Cranman. Therefore, DHR and Godfrey have established a clear legal right to the relief, they seek, and we direct the Walker Circuit Court to enter a summary judgment for DHR and Godfrey.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.

. M.H. was under the care of the Jefferson County Department of Human Resources, which placed him with foster parents residing in Walker County.

. It is unclear why no further action occurred in this case until June 2010.