WISE, Justice.
Angela McClintock, Stephanie Streeter, and Christa Devaughn (hereinafter referred to collectively as "the petitioners"), all of whom are employees of the Jefferson County Department of Human Resources ("JCDHR") and defendants below, petitioned for a writ of mandamus requesting that this Court direct the Jefferson Circuit Court to enter a summary judgment in their favor based on State-agent immunity. We grant the petition and issue the writ.
Facts and Procedural History
On June 30, 2011, T.H. was charged with third-degree domestic violence when S.W., T.H.'s mother, filed charges against her for striking a sibling in the face. On December 21, 2011, T.H. gave birth to K.W. On December 23, 2011, while T.H. was still in the hospital, T.H.'s grandmother reported to JCDHR that she had concerns that T.H. would not be able to care for her new baby, that T.H. had left her father's home, and that T.H. had a history of running away. After conducting an investigation, JCDHR allowed T.H. to be discharged from the hospital to the home of K.M., T.H.'s second cousin.
On December 27, 2011, a social worker with JCDHR contacted K.M. to schedule a home visit. At that time, K.M. advised the social worker that T.H. had left with K.W. shortly after arriving at her house. She also indicated that she thought that T.H. and K.W. were living with K.W.'s father.
*182 On December 29, 2011, K.H., T.H.'s father, filed a dependency complaint, seeking custody of K.W. In his complaint, he alleged:
"[T.H.] is a 15-year old who think[s] she is grown, she do[es] not want to follow rules. She is real disrespectful, t[o]ward me, and she do[es] not want to do anything I say. She is so out of control, and says I, can't tell her what to do, because she [is] grown; so that's why I need legal help, before she get[s] hurt or hurt[s] her baby. Also mother 15 gave birth to a baby boy on 12-21-2011 and ran away and left baby unattendent [sic]."
On January 4, 2012, K.H. filed a motion to dismiss the complaint, stating that he had "found [T.H.] and her infant baby boy and now have them in my care, and if for any reason she run[s] away, I am to contact Det. Thomas."
On January 20, 2012, Devaughn filed a dependency complaint as to T.H. and a request for a pickup order for K.W. She alleged that T.H., who was a minor, was not living with her custodian, K.H.; that K.H. was being investigated for abandonment; that T.H. had a history of running away; and that T.H. had not shown that she could responsibly care for K.W. K.W. was picked up and placed in the foster home of Dennis Gilmer on that same date.
K.W. died on February 24, 2012, while in foster care. At the time of K.W.'s death, McClintock was the director of JCDHR; Streeter was an assistant director of child welfare for JCDHR; and Devaughn was a child-abuse and neglect investigative worker for JCDHR.
On February 21, 2014, K.H. and T.H. filed a complaint in the Jefferson Circuit Court against the petitioners, Brandon Hardin, Dennis Gilmer, and JCDHR.[1] They stated claims of wrongful death of a minor, negligence, wantonness, and negligent/wanton training and supervision. K.H. and T.H. alleged that the petitioners had negligently, wantonly, and/or recklessly removed K.W. from T.H.'s custody; that they had negligently, wantonly, and/or recklessly placed him in Gilmer's care; and that they had negligently, wantonly, and/or recklessly failed to properly train, instruct, and supervise Gilmer. They also alleged that Gilmer had negligently, wantonly, or recklessly allowed K.W. to be placed face-down on a sheet that was allegedly too large for the mattress in his crib and that, as a result, K.W. had suffered fatal injuries.
On August 29, 2016, the petitioners filed a motion for a summary judgment. They argued that they were entitled to immunity on several bases, including an assertion that they were entitled to State-agent immunity pursuant to Ex parte Cranman, 792 So.2d 392 (Ala. 2000). On March 9, 2017, K.H. and T.H. filed a motion in opposition to the petitioners' motion.
The trial court conducted a hearing on the motion for a summary judgment.[2] On February 20, 2017, it denied the motion. This petition followed.
Standard of Review
" 'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.' Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000). A writ of mandamus is an extraordinary remedy available only when there is: '(1) a clear *183 legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala. 2001)."
Ex parte Nall, 879 So.2d 541, 543 (Ala. 2003). Also,
"whether review of the denial of a summary-judgment motion is by a petition for a writ of mandamus or by permissive appeal, the appellate court's standard of review remains the same. If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P. In determining whether there is a material fact on the question whether the movant is entitled to immunity, courts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion for a summary judgment. Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000)."
Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002).
Discussion
The petitioners argue that the trial court erroneously denied their motion for a summary judgment. Specifically, they contend that they presented evidence indicating that they were "discharging duties imposed on a department or agency by statute, rule, or regulation" at the time of the actions challenged in this case. The petitioners also assert that K.H. and T.H. failed to satisfy their burden of establishing that one of the exceptions to State-agent immunity applies to this case. Therefore, the petitioners argue, they are entitled to State-agent immunity pursuant to Ex parte Cranman, supra.
In Ex parte Cranman, the rule governing State-agent immunity was restated as follows:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons *184 of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. Even though Cranman was a plurality decision, its restatement of the law as to State-agent immunity was later adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala. 2000). "Once it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Cranman, 792 So.2d at 405." Ex parte Bitel, 45 So.3d 1252, 1257-58 (Ala. 2010). Also,
"[t]his Court has established a 'burden-shifting' process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052 ; Ex parte Wood, 852 So.2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052 ; Wood, 852 So.2d at 709 ; Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998). 'A State agent acts beyond authority and is therefore not immune when he or she "fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." ' Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000) ).
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala. 2006).
"One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed ' "to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." ' Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003) (quoting Ex parte Butts, 775 So.2d [173,] 178 [ (Ala. 2000) ] ).
Ex parte Kennedy, 992 So.3d 1276, 1282-83 (Ala. 2008).
The petitioners assert that they are entitled to State-agent immunity based on category (3) in Cranman-"discharging duties imposed on a department or agency by statute, rule, or regulation," 792 So.2d at 405. K.H. and T.H. do not refute this assertion in their response to this Court. We agree with the petitioners and hold that they satisfied their burden of establishing that they were entitled to State-agent immunity based on Ex parte Cranman.
Because the petitioners established that they were entitled to State-agent immunity, the burden then shifted to K.H. and T.H. to establish that " 'one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable.' " Ex parte City of Montgomery, 99 So.3d 282, 293 (Ala. 2012) (quoting *185 Ex parte Kennedy, 992 So.2d at 1282 ). After the petitioners presented evidence showing that they would be entitled to State-agent immunity, K.H. and T.H. argued that the petitioners "acted beyond their authority and failed to discharge their duties pursuant to the mandatory rules and regulations of the Alabama Department of Human Resources which did not leave room for them to exercise any discretionary or professional judgment regarding the removal and placement of [K.W.]." Specifically, they contended that the petitioners violated the allegedly mandatory relative-placement policy of the Alabama Department of Human Resources ("DHR") and failed to ensure that Gilmer complied with the requirements set forth in DHR's "Minimum Standards for Foster Family Homes."
With regard to the relative-placement policy, K.H. and T.H. cited DHR's "Out-of-Home Care Policies and Procedures" guidelines for choosing the least restrictive setting for the placement of children. The portion of the guidelines upon which K.H. and T.H. rely states, in relevant part:
"When out-of-home care becomes necessary, children should be placed in the least restrictive setting. This means the most family-like setting that can provide the environment and services needed to serve the child's best interest and special needs. Relative placement should always be given first consideration after which foster family care, group home care, and institutional care, are to be considered in that order."
Although they cited the guidelines regarding relative placements and made general allegations that the petitioners failed to consider T.H.'s grandmother, G.C., and her father, K.H., as relative placements for K.W., K.H. and T.H. did not present any actual evidence to support those allegations.
Also, with regard to the foster-family-home policies, K.H. and T.H. cited to DHR's "Minimum Standards for Foster Family Homes" guidelines for physical care of children. The portions of the guidelines upon which they rely state:
"If infants will be placed in the home, the additional guidelines must be followed:
"(1) Clean, tight fitting crib sheets shall be provided as frequently as needed.
"(2) An infant shall sleep alone in a crib until age 18 months. It is strongly recommended the infant be placed on his or her side or back or as recommended by a pediatrician."
K.H. and T.H. asserted:
"Viewing the facts in the light most favorable to [K.H. and T.H.], a trier-of-fact could reasonably conclude that Defendants McClintock, Streeter and Devaughn allowed [K.W.] to be placed into a foster home without first properly training, instructing or supervising their staff and/or the foster care providers on the Minimum Standards for Foster Family Homes, which resulted in [K.W.] being placed face-down on a sheet too large for his crib's mattress, thereby posing the potential for suffocation."
Again, although they cited the guidelines for care of children by foster families and made general allegations about the petitioners' actions and/or inactions, K.H. and T.H. did not present any evidence to support those allegations.
K.H. and T.H. did not present any evidence, much less substantial evidence, to create a genuine issue of material fact as to whether the petitioners " 'failed " 'to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist,' " ' " Ex parte City of Montgomery, 99 So.3d at 294 (quoting other cases), or acted willfully, maliciously, fraudulently, *186 in bad faith, beyond their authority, or under a mistaken interpretation of the law. Because K.H. and T.H. did not demonstrate that one of the exceptions to State-agent immunity under Ex parte Cranman applies under the facts of this case, the petitioners are entitled to State-agent immunity. See Ex parte Jefferson Cty. Dep't of Human Res., 63 So.3d 621, 627 (Ala. 2010).
Conclusion
For the above-stated reasons, we conclude that the petitioners have established that they have a clear legal right to a summary judgment in their favor based on State-agent immunity under Ex parte Cranman. Accordingly, we grant the petition for a writ of mandamus and direct the trial court to vacate its order denying the petitioners' motion for a summary judgment and to enter a summary judgment for the petitioners.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Main, Bryan, and Sellers, JJ., concur.
Murdock, J., concurs in the result.
Parker and Shaw, JJ., dissent.
The third category of Cranman immunity applies to the discharge of duties imposed by statute, rule, or regulation, but only "insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000). By its terms, this condition does not appear to be applicable in this case. I do believe, however, that the actions for which the petitioners are allegedly liable involve the exercise by those individual petitioners of discretion in a quintessentially State function. I therefore concur in the result.
The decision in Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000), provides that State agents are immune from civil liability when the conduct made the basis of the claim against them is based upon the agents' "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." (Emphasis added.) Although the petition for the writ of mandamus indicates that the State agents in this case were exercising discretion or judgment and that they were discharging duties imposed by statutes, rules, or regulations, the petition does not convince me that those statutes, rules, or regulations prescribed "the manner for performing" those duties and that the petitioners were discharging those duties "in that manner." The petition does not demonstrate that the burden shifted to K.H. and T.H. to show that an exception to Ex parte Cranman applies; therefore, I respectfully dissent.

It appears that the claims against Hardin, Gilmer, and JCDHR were dismissed.

No party has provided a transcript of the hearing for this Court's review.